[Civ. No. 8675.   Fourth Dist., Div. Two.   Oct. 23, 1968.]

TRACY PRICE ASSOCIATES, Plaintiff, Cross-defendant and Appellant, v. R. T. HEBARD et al., Defendants, Cross-defendants and Respondents; MIKE KELBER, Defendant, Intervener and Appellant; UNITED CALIFORNIA BANK, Defendant, Cross-complainant and Respondent.

Eller & Winton, Edward A. Hoffman and Howard L. Winton for Plaintiff, Cross-defendant and Appellant.

Kelber & Kelber and Bernard Kelber for Defendant, Intervener and Appellant.

Swanwick, Donnelly & Proudfit and Howard D. Henson for Defendant, Cross-complainant and Respondent.

No appearance for Defendants, Cross-defendants and Respondents.

TAMURA, J.—The central issue on this appeal is whether a security interest under a trust deed is subject to a mechanic's lien for architectural services, rendered pursuant

to a contract with the owner, for preparation of plans for improvements to be constructed on the land where the trust deed was recorded after the architect commenced preparation of plans but where actual physical construction of the contemplated improvements never commenced. A subsidiary question is presented relating to priorities of claims to the proceeds of a trust deed foreclosure sale.

The facts giving rise to the architect's claim may be summarized as follows:

Defendant Hebard was the owner of a 10-acre parcel of unimproved land which he contemplated developing by constructing a service station on a half-acre site and a motel, restaurant and office building complex on the remaining 9½ acres.

Hebard discussed the proposed project with Price, president of plaintiff (Price Associates), a firm engaged in providing architectural services. Following the meeting, Price Associates prepared and submitted a feasibility report and preliminary sketches of the proposed improvements and Price and Hebard discussed the selection of an engineer to be retained to survey the land.

On June 10, 1963, Hebard entered into a contract with Arrowhead Engineering Corporation (Arrowhead) for a property line and topographical survey. Price discussed with Arrowhead the data required by the architects for the preparation of plans. Pursuant to the contract Arrowhead surveyed the 10 acres, placed permanent monuments at each corner of the two parcels, prepared a contour map and set temporary grade stakes.

On June 13, 1963, Hebard entered into a written contract with Price Associates for the preparation of plans and specifications for the motel, restaurant and office building complex and for architectural supervision during its construction. Immediately upon execution of the contract Price Associates commenced its work, all of which was performed in its offices except that on one occasion Price took a portable plane table to the site to ascertain the appropriate heights of certain proposed structures.

In December 1963 Price Associates completed working drawings and submitted a set to the city building department in conjunction with an application for a building permit. A building permit was never issued because Hebard failed to pay the permit fee and post the required bond. By December

1963 Hebard was aware of the fact that the project would never become a reality; he was then "broke" and other ventures in which he was interested were failing.

Meanwhile a dispute arose between Price and Hebard respecting their rights and obligations under the June 13, 1963, contract, particularly as it related to the payments required to be made by Hebard. To settle their dispute, they executed a new contract on February 20, 1964, which recited that they were entering into it "as a complete compromise and settlement and for the purpose of a novation" of the previous agreement. The agreement provided that Hebard would use his best efforts to proceed with the contemplated construction "as soon as possible," that a construction loan would be obtained prior to construction and that upon its recordation Hebard would pay Price Associates a specified sum less any amounts which might have been paid on a promissory note which Hebard and his wife executed contemporaneously with the new contract. The new agreement required Price to furnish Hebard with 10 sets of the final plans with all revisions and corrections. On March 6, 1964, Price Associates complied with that requirement but Hebard never obtained construction financing and the project failed.

On May 22, 1964, Price Associates recorded a mechanic's lien against the 9½-acre parcel for an alleged indebtedness of $72,000 for services rendered in the preparation of working drawings and specifications for the proposed project.

The other claims in controversy arose in the following manner:

From the time he acquired the 10-acre parcel Hebard placed a number of succeeding trust deeds on the property, each replacing the prior. On December 30, 1963, a trust deed executed by Hebard in favor of Equity Capital Company (Equity Capital), a Minnesota corporation, was recorded against the 9½-acre parcel. United California Bank (Bank) was later substituted in place of the original trustee under that deed of trust. By an assignment recorded on July 23, 1964, defendant Kelber acquired the beneficial interest in the Equity Capital Trust deed.

On July 1, 1964, in an unrelated action against Hebard for monies due and owing, the Bank recorded an attachment lien against the subject property. A judgment in favor of the Bank was subsequently entered in that action and a writ of execution was issued.

On July 22, 1964. Price Associates filed the present action to foreclose its asserted mechanic's lien and to recover on the promissory note executed by the Hebards.

Thereafter, defendant Kelber foreclosed on the Equity Capital trust deed and on January 13, 1965, purchased the property at the trustees's sale paying $41,424.99 over and above the indebtedness secured by the trust deed. The Bank retained the excess asserting that it was entitled to do so by virtue of its attachment lien.

Following the foregoing events Price Associates filed an amendment to its complaint alleging that the Hebards and other defendants claimed some interest in the property but that such claims were junior to its mechanic's lien. The Bank answered and cross-complained for a decree determining that its claim to the excess proceeds of the foreclosure sale was superior to that of Price Associates or of any other claimant. Defendant Kelber answered, alleging ownership of the property, and filed a ''complaint in intervention'' to quiet title alleging that Price Associate's lien was invalid.

Following a nonjury trial the court found that Price Associates began providing architectural services on June 13, 1963, that construction of the proposed project never commenced, that Hebard ''prevented'' construction and that Price Associate's interest in the land was superior to those of the other claimants. However, on the Bank's cross-complaint, the court found that by virtue of the attachment lien, the Bank had a prior claim to the excess funds in its possession arising out of the foreclosure sale. The property was ordered sold to satisfy Price Associate's claim and the Bank was decreed to be entitled to the excess funds.

Defendant Kelber appeals from the judgment in its entirety contending (1) that Price Associate's lien was invalid, or (2) that, assuming it to be valid, the lien attached to the excess funds in possession of the Bank and, hence, that portion of the judgment awarding the funds to the bank was erroneous.

Price Associates filed a notice of appeal from the portion of the judgment awarding the funds to the Bank was erroneous. determination by this court that the February 20, 1964, agreement constituted a true novation. In the latter event Price Associates contends that although its lien rights under the February 20 agreement would be junior to the Equity Capital trust deed, it would be entitled to priority over the Bank's attachment lien.

■ As indicated at the outset, the decisive issue is whether, in the light of the uncontroverted finding that actual construction of the contemplated improvements never commenced, the court erred in concluding that Price Associates' asserted mechanic's lien was superior to the interests of Kelber and the Bank.

■ In addition to the classes of persons listed in the Constitution (Cal. Const., art. XX, § 15), the Legislature has extended to others, including architects, performing labor or bestowing skill or other necessary services in the construction of any building, structure, or other work of improvement a lien upon the property upon which they have bestowed such labor, skill or services. (Code Civ. Proc., § 1181). ■ Mechanic's liens are preferred to any lien, mortgage, deed of trust, or other encumbrances ''which may have attached subsequent to the time when the building, improvement, structure, or work of improvement in connection with which the lien claimant has done his work or furnished his material was commenced. . . .'' (Code Civ. Proc., § 1188.1)

Price Associates contends (1) that the ''work of improvement'' commenced when Arrowhead performed the engineering work; (2) that the claim for architectural services was lienable despite the fact that actual construction never commenced because construction was prevented through the fault of the owner; and (3) that its asserted lien was entitled to priority over the trust deed because Equity Capital was not a good faith lienor without notice.

· ■ Price Associates may not ride on the coattails of Arrowhead. While Arrowhead's work was lienable under the statute (*Scott, Blake & Wynne* v *Summit Ridge Estates, Inc.,* 251 Cal.App.2d 347, 356 [59 Cal.Rptr. 587]; *Nolte* v. *Smith,* 189 Cal.App.2d 140 [11 Cal.Rptr. 261, 87 A.L.R.2d 996]), its work may not be deemed commencement of the ''work of improvement'' insofar as Price Associates' claim is concerned. Engineering work necessary to survey and subdivide land falls within the class of ''improvements'' described in section 1184.1.[1] (*Scott, Blake & Wynne* v. *Summit Ridge Estates, Inc., supra,* at p. 356; *Nolte* v. *Smith, supra,* at p.

---

· [1]Section 1184.1, Code of Civil Procedure, provides: ''Any person who, at the instance or request of the owner (or any other person acting by his authority or under him, as contractor or otherwise) of any lot or tract of land, demolishes or removes any improvements, trees, or other vegetation located thereon, or drills test holes thereon, or grades, fills in, or otherwise improves the same, or the street, highway, or sidewalk in front of or adjoining the same, or constructs or installs sewers or other public utilities therein, or constructs any areas, or vaults, or cellars, or rooms, under

145.) Where preliminary subdivision work of the character described in section 1184.1 is provided for ''in a separate contract from any contract or agreement with respect to the erection of residential units or other structures,'' such work is deemed ''a separate work of improvement and the commencement thereof shall not constitute a commencement of the work of improvement consisting of the erection of any residential unit or other structure upon said . . . land.'' (Code Civ. Proc., § 1189.1, subd. (a).) Arrowhead's work was of the character described in section 1184.1 and was performed under a separate contract with the owner. The statute thus precludes Price Associates from relying upon Arrowhead's work as constituting commencement of the work of improvement. (See Hopkins, *Selected Mechanic's Lien Priority Problems,* 16 Hast.L.J. 155, 158.)

Price Associates contends nevertheless that commencement of construction was not a prerequisite to the validity of its lien because Hebard prevented commencement by failing to secure construction financing.

The question whether an architect's claim for services rendered in the preparation of working plans is lienable against the interest of the one who contracted for his services where, through the fault of the owner of such interest, no actual work on the ground is commenced has never been squarely decided in this state. In *Design Associates, Inc.* v. *Welch,* 224 Cal.App.2d 165 [36 Cal.Rptr. 341], architectural services for the preparation of ''pre-preliminary'' plans to be used by the owner in a stock prospectus was held to be too remote from construction to be of a character lienable under the statute. In *McDonald* v. *Filice,* 252 Cal.App.2d 613 [60 Cal.Rptr. 832], architectural services for the preparation of working drawings were held non-lienable because the project was abandoned by mutual agreement before any actual construction commenced.

In *Nolte* v. *Smith, supra,* 189 Cal.App.2d 140, upon which Price Associates place great emphasis, the owner, through an undercapitalized corporation formed for tax advantage, contracted for the services of an engineer to subdivide land into residential lots. The engineer surveyed the property, set permanent markers and monuments and prepared a final subdivision map which would have been recorded but for the failure of the owner to post the required bond. In *Nolte* the

said sidewalks, or makes any improvements in connection therewith, has a lien upon said lot or tract of land for his work done and materials furnished.''

court held that the engineer's services were lienable despite the fact that the final map was not recorded. Actual work on the ground of substantial benefit to the land was performed. In the case under review, apart from Arrowhead's work which did not qualify as commencement of the work of improvement insofar as Price Associates' services were concerned, no work of any character was performed on the land.

*Nolte* v. *Smith, supra,* 189 Cal.App.2d 140 [11 Cal.Rptr. 261, 87 A.L.R.2d 996], did cite with apparent approval *Lamoreaux* v. *Andersch,* 128 Minn. 261 [150 N.W. 908], in which the Minnesota court held an architect's claims to be lienable against the interest of the owner who contracted for his services where, after final plans were prepared and approved and bids for construction were received, the owner refused to proceed with construction and repudiated the architect's contract. The court reasoned that it would be inequitable to permit the architect's right to a lien to be defeated by the owner's repudiation of the contract and his wrongful refusal to proceed with construction. If we interpret the opinion in *Nolte* correctly, *Lamoreaux* v. *Andersch, supra,* was cited for the proposition that wrongful prevention of construction by the owner can be a decisive factor with respect to the lienability of his interest. In *Nolte,* however, the court emphasized the presence of the addditional factor of actual physical work on the ground.[2]

But we need not decide whether the Minnesota rule declared in *Lamoreaux* v. *Andersch, supra,* is or should be the law in this state. *Lamoreaux* was restricted to the issue of the lienability of the architect's claim against the interest of the one who contracted for his services and who had the power to decide whether or not construction should proceed.[3] The

[2]In *Lamoreaux* v. *Andersch, supra,* 128 Minn. 261 [150 N.W. 908], a survey had been made and furnished to the architect and an old structure was demolished. The court disregarded such work by saying that it was performed independently of the architect's contract and that the latter contributed nothing to it.

[3]In Minnesota *Lamoreaux* v. *Andersch, supra,* 128 Minn. 261 [150 N.W. 908], is not extended to a subsequent mortgagee. (*Reuben E. Johnson Co.* v. *Phelps,* 279 Minn. 107 [156 N.W.2d 247, 252-253]; *Erickson* v. *Ireland,* 134 Minn. 156, 161 [158 N.W. 918]; *Smith* v. *Brooks,* 38 Minn. 240 [36 N.W. 346].) While the priorities provision of the Minnesota mechanic's lien statute expressly incorporates "the actual and visible beginning of the improvement on the ground" test whereas section 1188.1, Code of Civil Procedure, simply refers to commencement of the work of improvement, the latter phrase has been construed to mean "some work and labor on the ground, the effects of which are apparent. . . ." (*Simons Brick Co.* v. *Hetzel,* 72 Cal.App. 1, 5 [236 P. 357]; see *English* v. *Olympic Auditorium, Inc.,* 217 Cal. 631, 637 [20 P.2d 946, 87 A.L.R. 1281].)

result in that case represents an extension of the doctrine recognized in this state that where an improvement is not completed or is destroyed through the fault of the person whose interest is sought to be impressed with the lien, he is estopped to deny benefit. (See *Design Associates, Inc.* v. *Welch, supra,* 224 Cal.App.2d 165, 173; *Nolte* v. *Smith, supra,* 189 Cal.App.2d 140, 148.) ■ In the case under review, assuming, *arguendo,* that Hebard was at fault in causing the project to fail and that he was thereby estopped from defeating the architect's right to a lien, there is no basis for invoking estoppel against Equity Capital or the Bank. There was no evidence that they were invested with or exercised any control over whether the project would or would not be constructed or that they wrongfully prevented construction.

■ Price Associates contends that its right to a lien is somehow entitled to priority because prior to the recordation of the trust deed Equity Capital had knowledge of the proposed project and of the architect's work. The contention is without merit.

The general rule that liens have priority according to the time of their creation (Civ. Code, § 2897) governs in fixing priorities under the mechanic's lien law. (*Barr Lbr. Co.* v. *Shaffer,* 108 Cal.App.2d 14, 20 [238 P.2d 99]; see *Rheem Mfg. Co.* v. *United States,* 57 Cal.2d 621, 624 [21 Cal.Rptr. 802, 371 P.2d 578].) The condition precedent to Price Associate's priority was the commencement of construction. It not having commenced insofar as the trust deed was concerned, Price Associates is in no position to assert priority. ■ Price Associates is in effect contending that where one takes a trust deed with knowledge that the owner plans to construct improvements on the land and that if he does an architect has a potential lien, he waives or is estopped to assert his rights under the trust deed if through the fault of the owner the project is abandoned. Clearly such knowledge alone cannot constitute waiver or estoppel. (See *Rheem Mfg. Co.* v. *United States, supra,* 57 Cal.2d 621; *Reuben E. Johnson Co.* v. *Phelps,* 279 Minn. 107 [156 N.W.2d 247].) ■ There can be no estoppel unless the party asserting it relied to his detriment on the conduct of the person to be charged. (*Rheem Mfg. Co.* v. *United States supra,* 57 Cal.2d 621, 626.) ■ The trust deed being for security purposes only, it was not incumbent upon Equity Capital to give notice of nonresponsibility. (*Rheem Mfg. Co.* v. *United States, supra.*) To hold that such knowledge constitutes waiver or estoppel would expose lenders

to so many unpredictable hazards that construction financing would become extremely difficult. ▮ Although mechanic's lien laws should be liberally construed to protect those who have contributed skills, services or materials, towards the improvement of property, it has been recognized that lien laws are for the protection of owners as well as mechanic's lien claimants. (*R. D. Reeder Lathing Co.* v. *Allen,* 66 Cal.2d 373, 379 [57 Cal.Rptr. 841, 425 P.2d 785] ; *Borchers Bros.* v. *Buckeye Incubator Co.,* 59 Cal.2d 234, 239 [28 Cal.Rptr. 697, 379 P.2d 1].) ▮ It may be said with equal validity that section 1188.1 of the Code of Civil Procedure prescribing a rule for determining priorities was designed for the protection of those who take security interests in land as well as for the protection of mechanic's lien claimants.

▮ In the case under review no actual work on the ground having been commenced, visible or otherwise, we conclude that the claim for architectural services may not be asserted as a valid lien against either Kelber's interest under the trust deed or the Bank's interest under its attachment lien.

The Bank's lien was thus next in priority to the trust deed and Price Associate's lien, if any, was junior to both. The junior liens having been destroyed by the foreclosure sale and the Bank's lien being next in priority, the latter attached to the excess proceeds of the foreclosure sale. (*Dockrey* v. *Gray,* 172 Cal.App.2d 388 [341 P.2d 746] ; *Sohn* v. *California Pac. Title Ins. Co.,* 124 Cal.App.2d 757 [269 P.2d 223].) The trial court thus correctly determined that the bank was entitled to retain the funds in its possession.

In view of the foregoing, it is unnecessary to consider the effect, if any, of the February 20, 1964, agreement between Price Associates and Hebard or to pass upon other grounds upon which Kelber and the Bank challenge the validity of the architect's lien.

That portion of the judgment decreeing that the Bank's lien on the excess proceeds of the foreclosure sale is prior and superior to the interest, right, or claim thereto of any other party is affirmed. The remainder of the judgment insofar as it relates to the interests, liens, rights, or claims of the parties to this appeal to the 9½-acre parcel of land is reversed with directions to enter judgment in conformity with this opinion.

McCabe, P. J., and Kerrigan, J., concurred.