[S. F. No. 22711. In Bank. Mar. 6, 1970.]

JOHN C. WALKER et al., Plaintiffs and Respondents, v. LYTTON SAVINGS AND LOAN ASSOCIATION OF NORTHERN CALIFORNIA et al., Defendants and Appellants.

## COUNSEL

Tobin & Tobin and John J. Hopkins for Defendants and Appellants.

Lawrence W. Jordan, Jr., Kelso, Cotton, Seligman & Ray, William S. Clark and Rogers, Clark & Jordan for Plaintiffs and Respondents.

## OPINION

**BURKE, J.**—In this mechanic's lien case, a deed of trust given defendant Lytton Savings and Loan Association (Lytton), to secure a construction loan, was recorded after plaintiff architects had prepared plans and specifications for the proposed construction, but before any actual physical construction had commenced. The trial court decreed that plaintiffs' mechanic's lien had priority over the deed of trust, and defendant appeals.[1] As hereinafter appears, we have concluded the court erred in its application of the priority rules set forth in section 1188.1 of the Code of Civil Procedure, and that the judgment against Lytton should be reversed.

The facts are without dispute. In May 1963 defendants 1231 Jones, Inc., and the Dunns (hereinafter, "owners"), who held fee title to certain San Francisco real property, entered into an oral contract with plaintiff licensed architects (which was later reduced to writing), under which plaintiffs were to perform and provide architectural services and materials for the carrying out of a scheme of improvement on the owners' property, and the owners were to pay plaintiffs the reasonable value of such services and materials.

[1]Lytton Financial Corporation, trustee under the deed of trust, is also a defendant and appellant.

Plaintiffs immediately commenced performance of the contract and by August 1964 had completed surveys, scale details, working drawings, plans, specifications and studies on a 42-unit apartment building, and later, on a modified scheme of improvement, completed work of the same nature for a proposed 67-unit structure.

Financing of the original 42-unit building was provided by Lytton, and in August 1964 negotiations were commenced between the owners and Lytton for the financing of the 67-unit structure. During the course of these negotiations Lytton had actual knowledge of the agreement between plaintiffs and owners, and also had actual knowledge that plaintiffs had provided architectural services under such agreement since its inception in 1963 and that plaintiffs were in the course of modifying the plans and working drawings to provide for a 67-unit building. The owners had submitted to Lytton letters to and from plaintiffs and the owners relating to the manner of payment and the amount of plaintiffs' fees, and had also submitted evidence that certain of such fees had been paid, although Lytton was not aware of the exact amount of money due plaintiffs. No billings were made by plaintiffs to Lytton.

In October 1964 at Lytton's request the plans prepared by plaintiffs for the 67-unit structure were submitted to Lytton, which reviewed and approved them. Thereafter, on December 11, 1964, plaintiffs submitted by letter to Lytton a review made at the owners' request of the cost estimate breakdown and bids which had been submitted to plaintiffs (apparently by the owners) for the construction of the 67-unit building in accordance with the plans and specifications which plaintiffs had prepared. Lytton relied upon this information in making its appraisal for loan purposes.

On December 15, 1964, the owners, in consideration of a construction loan from Lytton, executed a promissory note in Lytton's favor in the amount of $1,609,000 and a deed of trust on the owners' real property as security therefor. The deed of trust was recorded on December 28, 1964, on which date, as declared by the trial court in its findings, *no work had been done on the owners' property and no materials had been delivered thereto for the planned construction.*

Thereafter, between March and May 1965, in furtherance of the plan to construct the 67-unit apartment building, structures on the owners' property were demolished, the building site was graded and excavated, and an 8-foot high chain fence was erected on the premises. Plaintiffs supervised and inspected such services performed on the property. No further work has occurred at the job site. Fabrication of the structural steel for the 67-unit building was commenced but none thereof was delivered to the site. Plaintiffs secured site approval and excavation and

foundation permits, applied for a building permit, and continued to perform and provide architectural services and materials for the planned apartment building until September 15, 1965, on which date they performed the last such service. On November 4, 1965, the owners orally notified plaintiffs to cease work. No building permit was ever issued and the proposed building was never constructed.

On December 29, 1965, plaintiffs recorded a claim of mechanic's lien against the real property.

On February 3, 1966, a trustee's sale was conducted under the deed of trust, and the property was purchased by the beneficiary, Lytton. Thereafter, on March 11, 1966, plaintiffs filed the present action to foreclose their claimed mechanic's lien and filed a notice of lis pendens with the recorder.

In addition to finding in accordance with the above facts, the trial court found and concluded as follows: that Lytton knew of the architectural services rendered and being rendered by plaintiffs and utilized them to some extent prior to recording its deed of trust against the owners' property; that there was "commencement of the subject work of improvement as required by Section 1188.1 of the Code of Civil Procedure prior to the recordation of "Lytton's deed of trust; that Lytton's deed of trust was not superior to plaintiffs' lien against the property for architectural services, and that the sale under the deed of trust was subject to such lien; that plaintiffs were entitled to judgment for $19,500, plus interest, against defendant owners, and were entitled to a lien in that amount against the real property and to foreclose their lien. Judgment was entered accordingly, and this appeal by Lytton followed.

Architects "bestowing skill or other necessary services on . . . or . . . contributing to, the construction . . . of, any building, structure, or other work of improvement" are included among those whom section 1181 of the Code of Civil Procedure[2] provides "shall have a lien upon the property upon which they have bestowed labor . . . ."[3]

---

[2]Unless otherwise stated, all section references are to the Code of Civil Procedure, as such sections read at the times here involved.

In 1969 chapter 2 (commencing with § 1181) of title 4 of part 3 of the Code of Civil Procedure, which deals with mechanics' and materialmen's liens, was repealed (operative January 1, 1971), and its substance was reenacted as a part of title 15 (commencing with § 3082) to part 4 of division 3 of the Civil Code. (Stats. 1969, ch. 1362.)

[3]Section 1181, in full: "Mechanics, materialmen, contractors, subcontractors, artisans, *architects,* registered engineers, licensed land surveyors, machinists, builders, teamsters and draymen, and all persons and laborers of every class performing labor upon or bestowing skill or other necessary services on, or furnishing materials to be used or consumed in, or furnishing appliances, teams, or power contributing to, the

Section 1188.1 sets forth the general priority rules as between mechanics' and materialmen's liens on the one hand, and other liens or encumbrances on the other.[4] ▮ As applied in this case, the question is whether Lyttons' deed of trust attached prior to commencement of the structure or work of improvement within the meaning of section 1188.1. If it did, then the deed of trust takes priority; but if it did not, then plaintiffs' lien is preferred over the deed of trust.

Under section 1181 a lien arose in favor of plaintiffs at least as early as the site preparation work which they supervised (demolition, excavation, grading, fencing; see §§ 1182, 1184.1) and which took place between March and May 1965—well after recordation of the deed of trust.[5] However, as between plaintiffs and Lytton the issue is whether plaintiffs are entitled to priority despite the fact that, as the trial court found, Lytton's deed of trust was recorded before any work had been done on the owners' property or materials delivered thereto for the planned construction. We are convinced that under such circumstances it cannot be held that the structure or work of improvement had commenced within the meaning of the priority rules of section 1188.1 or that plaintiffs' preparation of plans and specifications constituted such commencement so as to give their lien priority over the deed of trust.

As plaintiffs point out, section 1182 declares that except as otherwise provided "work of improvement" means "the entire structure or scheme of improvement as a whole." ▮ Nevertheless, section 1181, *supra,* specifies that services giving rise to a mechanic's lien are those bestowed on or contributing to the *construction* of any building or other work of improvement. Thus the general rule is that such a lien does not attach

---

construction, alteration, addition to, or repair, either in whole or in part, of, any building, structure, or other work of improvement shall have a lien upon the property upon which they have bestowed labor or furnished materials or appliances for the value of such labor done or materials furnished and for the value of the use of such appliances, teams, or power, whether done or furnished at the instance of the owner or of any person acting by his authority or under him, as contractor or otherwise." (Italics added.)

[4]Section 1188.1 in pertinent part: "The *liens* provided for in this chapter, except as otherwise . . . provided, are *preferred to* any . . . *deed of trust,* or other encumbrance upon the premises and improvements . . . *which* may have *attached subsequent to* the *time when* the building, improvement, *structure, or work of improvement* in connection with which the lien claimant has done his work or furnished his material was *commenced; also to* any . . . *deed of trust,* or other encumbrance *of which* the *lien claimant had no notice and* which was *unrecorded at* the *time* the building, improvement, structure, or work of improvement . . . *was commenced. . . ."* (Italics added.)

[5]When actual construction commences on the ground or material for the construction is delivered to the site, the lien of the architect which then attaches is of course for all services rendered by him, including services rendered theretofore and which contributed to the construction.

unless and until *construction* has been undertaken by the doing of actual visible work on the land or the delivery of construction materials thereto. (See *Design Associates, Inc.* v. *Welch* (1964) 224 Cal.App.2d 165, 173 [36 Cal.Rptr. 341], and cases cited; see also *English* v. *Olympic Auditorium, Inc.* (1933) 217 Cal. 631, 637 [20 P.2d 946, 87 A.L.R. 1281]; *Arthur B. Siri, Inc.* v. *Bridges* (1961) 189 Cal.App.2d 599, 602 [11 Cal. Rptr. 322].)

Plaintiffs cite *Lamoreaux* v. *Andersch* (1915) 128 Minn. 261 [150 N.W. 908], in which the Supreme Court of Minnesota, construing a lien statute substantially similar to our own, upheld an architect's lien as against a landowner even though no physical change had been effected upon the land; the court noted that the owner had repudiated his contract with the architect and had abandoned the project before any work of construction had commenced, and ruled that "the owner cannot in this way destroy the right to a lien." Although *Lamoreaux* has been considered in several California cases (see *Nolte* v. *Smith* (1961) 189 Cal.App.2d 140, 148-149 [11 Cal.Rptr. 261, 87 A.L.R.2d 996]; *McDonald* v. *Filice* (1967) 252 Cal.App.2d 613, 620-621 [60 Cal.Rptr. 832]; *Tracy Price Associates* v. *Hebard* (1968) 266 Cal.App.2d 778, 786 [72 Cal.Rptr. 600]) the facts in each case differed from those of *Lamoreaux* and accordingly in none of them was the court called upon to decide whether the *Lamoreaux* ruling would be followed in this state.[6]

More to the point, however, *Lamoreaux* did not involve a priority issue between a mechanic's lien claimant and the holder of a deed of trust. That distinguishing factor has recently been pointed out in *Reuben E. Johnson Co.* v. *Phelps* (1968) 279 Minn. 107, 113-114 [156 N.W.2d 247], wherein the Minnesota court noted that the services of an architect in preparing plans for a building are not such a lienable item as to permit liens subsequent to a mortgage to attach as against the mortgagee, even though the building was constructed, and that "when a building is erected all liens attach at the time the first item of material or labor is furnished on the ground."

---

[6]Thus in *Nolte, supra,* the specific holding was that "the setting of permanent monuments in the ground, for land subdivision, following extensive engineering services, is . . . commencement of a 'work of improvement,' or 'improvement,' " (p. 149 of 189 Cal.App.2d) and supported the lien claim of a subdivision engineer, although the subdivision map was never approved because the owner failed to post a required bond.

In *McDonald* v. *Filice, supra,* the owners and the architect had rescinded their written contract of employment, thereby concededly abandoning the proposed project by mutual consent. (P. 620 of 252 Cal.App.2d.)

*Tracy Price,* discussed more fully *infra,* presented a priority issue between a trust deed holder and an architect claiming a mechanic's lien although actual physical construction of a planned improvement never commenced.

Similarly, in *Tracy Price Associates* v. *Hebard, supra,* 266 Cal.App.2d 778, it was held that a trust deed which was recorded after plaintiff architectural firm had commenced preparation of plans for a building which was never constructed took priority over plaintiff's claim of a mechanic's lien. There as here the architect contended that its lien right was somehow entitled to priority because the holder of the deed of trust had knowledge of the proposed project and of the architect's work before the deed of trust was recorded. The *Tracy Price* opinion notes that the general rule that liens have priority according to the time of their creation (Civ. Code, § 2897) governs in fixing priorities under the mechanic's lien law (*Barr Lbr. Co.* v. *Shaffer* (1951) 108 Cal.App.2d 14, 20 [238 P.2d 99]; see *Rheem Mfg. Co.* v. *United States* (1962) 57 Cal.2d 621, 624-625 [21 Cal.Rptr. 802, 371 P.2d 578]), and points out (pp. 787-788 of 266 Cal.App.2d) that "The condition precedent to [the architect's] priority was the commencement of construction. It not having commenced . . . [the architect] is in no position to assert priority. [The architect] is in effect contending that where one takes a trust deed with knowledge that the owner plans to construct improvements on the land and that if he does an architect has a potential lien, he waives or is estopped to assert his rights under the trust deed if through the fault of the owner the project is abandoned. Clearly such knowledge alone cannot constitute waiver or estoppel. (See *Rheem Mfg. Co.* v. *United States, supra,* 57 Cal.2d 621; *Reuben E. Johnson Co.* v. *Phelps* [*supra*] 279 Minn. 107. . . .) There can be no estoppel unless the party asserting it relied to his detriment on the conduct of the person to be charged. (*Rheem Mfg. Co.* v. *United States, supra,* 57 Cal.2d 621, 626.) . . . To hold that such knowledge constitutes waiver or estoppel would expose lenders to so many unpredictable hazards that construction financing would become extremely difficult. Although mechanic's lien laws should be liberally construed to protect those who have contributed skills, services or materials, towards the improvement of property, it has been recognized that lien laws are for the protection of owners as well as mechanic's lien claimants. [Citations.] It may be said with equal validity that section 1188.1 . . . prescribing a rule for determining priorities was designed for the protection of those who take security interests in land as well as for the protection of mechanic's lien claimants."

The court ruled, accordingly, that "no actual work on the ground having been commenced, visible or otherwise, . . . the claim for architectural services may not be asserted as a valid lien against [the interest of the beneficiary under the deed of trust] . . . ." (P. 788 of 266 Cal.App.2d.)

■ We are in accord with the views expressed in *Tracy Price, supra,* which are dispositive of the present appeal. Although in this case visible work on the ground did take place, it did not commence until after

Lytton's deed of trust had attached. Under section 1188.1 the deed of trust therefore has priority. In this connection the following comments of the court in *Fiske* v. *School Dist. of City of Lincoln* (1899) 58 Neb. 163 [78 N.W. 392, 393], quoted with approval in *Design Associates, Inc.* v. *Welch, supra,* 224 Cal.App.2d 165, 173, appear appropriate: "The work of an architect may or may not, according to circumstances, fall within the head of building operations . . . . [A]n architect who prepares plans according to which a building is actually constructed may be said to furnish work in the construction of such building, especially when he superintends the construction. But the preparation of plans is often necessary as a preliminary, merely to assist an owner in determining whether he shall build, and, if so, how. While the project remains in this stage, the work cannot be said to be of a structural character. . . . [T]he preparation of plans and specifications merely in anticipation of erecting a building, —an anticipation which may or may not be realized—is not essentially a building operation. . . ." Similarly, until the building operation has commenced on the ground, it cannot be held under the statutory priority rules spelled out by the Legislature in section 1188.1, that it has commenced so as to give preference to the lien of an architect who prepared the plans.

We note further that a contrary holding would appear to confuse, if not destroy, the statutory scheme of priorities. In addition to the section 1188.1 rules (fn. 4, *ante*) already discussed, section 1189.1 directs that if the site improvement work referred to in section 1184.1 (demolition, grading, filling, etc.) is "provided for in a separate contract from any contract or agreement with respect to the erection of . . . structures . . . , then the [site improvement work] shall be deemed a separate work of improvement and the commencement thereof shall not constitute a commencement of the work of improvement consisting of the erection of any . . . structure upon said . . . land. . . ." Section 1189.1 then lays down priority rules with respect to site improvement work done under separate contract, which are substantially identical to the rules found in section 1188.1, except for an additional proviso (subd. (b)(3) of § 1189.1) that unless certain procedures are followed a deed of trust or other encumbrance given "for the sole or primary purpose of financing" site improvement work shall be *inferior* to mechanics' liens even though the encumbrance was recorded before "commencement of the work of [site] improvement. . . ."

But if, despite these specific and detailed rules laid down by the Legislature, it be held for the benefit of plaintiff architects that even though, as here, an encumbrance has attached before any work has been done on the owners' property or materials delivered thereto for a planned improvement, nevertheless the work of improvement had commenced earlier when the architects began work on the plans and specifications, then the liens

of all others who contributed work or materials to the work of improvement (see § 1181, fn. 3, *ante*) would likewise relate back to the earlier date of commencement and thereby take priority over the subsequent encumbrance—whether given for a construction loan or based on some other consideration. That the Legislature intended no such result seems obvious. Additionally, under such circumstances it would appear that construction loans would shortly become next to impossible to obtain, as it is a rare construction project of any magnitude which does not require the preliminary nonvisible services of architects or engineers. But if all liens arising from the subsequent construction will relate back to the date of commencement of the nonvisible services, how many prudent businessmen would be willing to assume the risk?

What has already been said disposes of plaintiffs' suggestion that because in this case Lytton's deed of trust was to secure a construction loan—a factor not present in *Tracy Price, supra,*—the statutory priority rules should be disregarded. Equally without merit is plaintiffs' plea that their lien should take priority because in making an appraisal for loan purposes Lytton used and relied upon the plans and specifications they prepared. It is a matter of common knowledge that construction loans are not bestowed in a vacuum and without awareness and approval by lenders of the nature and detail of the proposed improvements which the owner has requested the lender to finance. If the lender's use and reliance upon the plans prepared by an architect on behalf of the owner is to work a change in the statutory priority rules, the change must be sought from the Legislature and not from this court.

That portion of the judgment awarding plaintiffs money damages against defendant owners 1231 Jones, Inc., and Morden Dunn is affirmed. In all other respects the judgment is reversed, with directions to the trial court to enter its judgment in favor of defendants Lytton Savings and Loan Association of Northern California and Lytton Financial Corporation. Costs on appeal shall be borne by plaintiffs.

Tobriner, Acting C. J., McComb, J., Peters, J., Mosk, J., Sullivan, J., and Draper, J.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.