In re L. BRUCE NYBO, INC., Debtor.

Paragon Henderson Associates I, a Nevada Limited Partnership; Kimball Hill Homes Nevada, Inc., a Nevada Corporation; Juliea M. Ness as Trustee of the Juliea M. Ness Family Trust, Appellants,

v.

L. Bruce Nybo, Inc., Appellee.

No. CVS990145JBRRJJ.
Bankruptcy No. S–972097–LBR.
Adversary No. S–972097.

United States District Court, D. Nevada.

April 4, 2000.

John Sacco, Sacco & Dion, Ltd., Las Vegas, NV, for appellant Kimball Hill Homes, Nevada; Juliea M. Ness; and Paragon Henderson Associates.

L. Truman, Tobler & Truman, Las Vegas, NV, for appellee L. Bruce Nybo, Inc. and Nybo Engineering.

## *OPINION*

RAWLINSON, District Judge.

This matter comes before the Court on an appeal (# 1) by Appellants Paragon Henderson ("Paragon"), Kimball Hill Homes ("Kimball") and Juliea M. Ness as trustee of the Juliea M. Ness Family Trust ("Ness") (Paragon, Kimball and Ness are sometimes jointly referred to hereinafter as "Appellants" or "Buyers") of the bankruptcy court's Findings of Fact and Conclusions of Law and Judgment in favor of Appellee L. Bruce Nybo, Inc. ("Appellee" or "Nybo") entered on October 21, 1998 upholding Nybo's mechanics' lien against property purchased by Buyers.

## *BACKGROUND*

L. Bruce Nybo, Inc., is a civil engineering firm which entered into an arrangement with Tri–Star International Development ("Tri–Star") between March 1996 and November 1996 to provide engineering service for a 433–acre parcel known as Black Mountain Vistas ("Black Mountain") owned by Tri–Star. The engineering services included the creation and recording of a parcel map so that the

property could be split into parcels and sold to builders or developers. Black Mountain was divided into at least 17 separate parcels (A – 44.85 acres, B1 – 15.62 acres, B2 17.84 acres, C – 30.57 acres, D1 – 2 acres, D2 – 1.9 acres, E1 – 8.5 acres, E2– 2.72 acres, E3 – 1.48 acres, E4 – 1.98 acres, E5 – 1.98 acres, F1 – 34.18 acres, F3 – 102.10 acres, G – 72.25 acres, I – 21.44 acres, J – 31.11 acres, and K – 33.59 acres).

Because Tri–Star had not paid the amount Nybo claims was due for the engineering services provided, on January 13, 1997, Nybo recorded its first notice of mechanics' lien. That lien was eventually released but another notice of lien was filed on February 18, 1997. Tri–Star stipulated at trial that the lien release was only intended to release Parcel J and not all the property at Black Mountain. The release of Parcel J was to be in exchange for a deposit of $200,000 to be held in escrow.

Subsequent to the notice of lien filed on February 18, 1997, Paragon purchased Parcels A, B1 and B2; Ness purchased Parcel D2; and Kimball purchased Parcel K. At trial, the only evidence presented of work actually performed at Black Mountain prior to conveying Parcels A, B1, B2, D2 and K to Buyers was the staking of parcel boundaries and potential streets. Paragon and Kimball authorized Nybo to perform certain engineering services on the parcels they purchased but Mr. Nybo, owner of Nybo, testified that Paragon and Kimball paid Nybo in full for the work authorized by Paragon and Kimball.

After filing for protection under Chapter 11 of the Bankruptcy Act, Nybo filed Adversary Case No. 97–2097 LBR on April 8, 1997 against Tri Star and Michael Shipsey, owner of Tri–Star. The Complaint alleged three claims for relief: (1) lien foreclosure on Black Mountain, (2) breach of contract and (3) unjust enrichment. On September 3, 1997, Nybo filed an Amended Complaint adding additional causes of action and additional defendants including Paragon.

Nybo filed a Second Amended Complaint on November 14, 1997, naming additional defendants including Kimball and Ness. The Second Amended Complaint alleges that Paragon, Kimball and Ness are owners of property at Black Mountain subject to Nybo's mechanics' lien and seeks foreclosure of the mechanics' lien.

Starting on January 6, 1998, the bankruptcy court held a bench trial on the lien foreclosure and breach of contract causes of action. Following the trial and oral arguments, on October 20, 1998, the bankruptcy court entered its Findings of Fact and Conclusions of Law. The bankruptcy court found Nybo's mechanics' lien to be valid and that the entire property at Black Mountain, including the parcels owned by Buyers, was subject to Nybo's mechanics' lien in the amount of $466,121.00. On that same day, the bankruptcy court entered judgment in favor of Nybo. Thereafter, the bankruptcy court entered orders and judgment against Buyers awarding attorneys' fees and costs to Nybo as a prevailing party in a mechanics' lien action.

On December 23, 1998, Buyers filed a motion to alter or amend judgment. In response to Buyer's motion and after the motion had been fully briefed and argued, the bankruptcy court, on February 2, 1999, directed the entry of judgment in accordance with Bankruptcy Rule 7054.

On February 5, 1999, Buyers filed a notice of appeal under 28 U.S.C. § 158(a) to this Court from the Findings of Fact and Conclusions of Law, the Orders and Judgments awarding attorney fees and costs, and the Order directing the entry of judgment pursuant to Bankruptcy Rule 7054. Subsequently, the bankruptcy court entered an Order staying enforcement of the judgment sale of Buyers' property pending appeal.

In their opening brief (# 327), filed on April 2, 1999, Buyers contend that the bankruptcy court committed the following reversible errors: (1) failing to enter findings with respect to the terms and condi-

tions of the contract between Tri–Star and Nybo for engineering services at Black Mountain; (2) finding that the notice of mechanics' lien recorded by Nybo on January 13, 1997, could be relied upon after it had been released; (3) concluding that Nybo's mechanics' lien was valid; (4) concluding that the Nybo's mechanics' lien was valid and enforceable against Buyers when no visible work of improvement had commenced at Black Mountain before or at the time Buyers closed on the purchase of their parcels; (5) concluding that Nybo did not waive its right to proceed against Buyers on its mechanics' lien action; (6) failing to find that Nybo did not mitigate its damages; (7) concluding that Buyers acquired title to their parcels with actual or constructive notice of Nybo's mechanics' lien and that Buyers therefore have no better rights in the subject property than those possessed by Tri–Star; (8) failing to conclude that Nybo's mechanics' lien should be apportioned among the parcels at Black Mountain; and (9) concluding that Nybo's mechanics' lien was valid upon all real property at Black Mountain even though Nybo failed to name all property owners in its foreclosure action. Nybo filed an Answering Brief (# 335) on April 30, 1999, opposing Buyers' claims of error, to which Buyers replied (# 337).

## STANDARD OF REVIEW

 The bankruptcy court's findings are reviewed under the clearly erroneous standard. *Ragsdale v. Haller*, 780 F.2d 794, 795 (9th Cir.1986); Bankr.R. 8013. Questions of law are reviewed de novo. *Id.* Interpretations of state law are reviewed under the same de novo standard as are questions of federal law. *Brooks v. Hilton Casinos*, 959 F.2d 757, 759 (9th Cir.1992). "A finding of fact is clearly erroneous, although there is evidence to support it, when the reviewing court, after carefully examining all the evidence, is left with the definite and firm conviction that a mistake has been committed." *Household Credit Serv. v. Ettell (In re Ettell)*, 188 F.3d 1141, 1145 (9th Cir.1999) (citation and quotation omitted).

## DISCUSSION

 Buyers contend Nybo's mechanics' lien did not attach to their parcels at Black Mountain because the specific requirements of NRS 108.225 (priority of liens) were not met prior to Buyers' purchase of their parcels and therefore Buyers' interests in their parcels have priority over Nybo's mechanics' lien and effectively eliminate Nybo's mechanics' lien as to Buyers' parcels. A mechanics' lien has priority over a conveyance if the lien attaches to the property before the conveyance is made. *See Schrader Iron Works v. Lee*, 26 Cal.App.3d 621, 632, 103 Cal.Rptr. 106, 113 (Cal.App.1972) (citing general rule). In Nevada, mechanics' liens do not attach to property until the priority requirements of Nevada's mechanics' lien statute (NRS 108.225) have been met. *See Aladdin Heating v. Trustees of Cent. States*, 93 Nev. 257, 563 P.2d 82, 84 (1977); *see also Calder Bros. Co. v. Ross L. Anderson Signs*, 652 P.2d 922, 924 (Utah 1982) (mechanics' liens attach when priority rules of the mechanics' lien statute have been satisfied);[1] *Walker v. Lytton Sav. & Loan Assn.*, 2 Cal.3d 152, 84 Cal.Rptr. 521, 465 P.2d 497, 500 (1970) (mechanics' lien does not attach to property until priority rules of the mechanics' lien statute have

---

1. Section 38–1–5 of Utah Code Annotated governs the priority of mechanic's liens which provides, in the relevant part, that mechanics' liens "shall relate back to, and take effect as of, the time of the commencement to do work or furnish materials on the ground for the structure or improvement, and shall have priority over any ... encumbrance which may have attached subsequently to the time when the building, improvement or structure was commenced, work begun, or first material furnished on the ground; also over any ... encumbrance of which the lien holder had no notice and which was unrecorded at the time the building, structure or improvement was commenced, work begun, or first material furnished on the ground."

been satisfied);[2] Pursuant to NRS 108.225(1), mechanics' and materialmen's liens are preferred to:

(a) Any lien mortgage or other encumbrance which may have attached after the time when the building, improvement or structure was commenced, work done, or materials were commenced to be furnished.

(b) Any lien, mortgage or other encumbrance of which the lienholder had no notice and which was unrecorded at the time the building, improvement or structure was commenced, work done, or materials were commenced to be furnished.

In *Erickson Construction v. Nevada Nat. Bank,* 89 Nev. 350, 513 P.2d 1236, 1237 (1973) the Nevada Supreme Court held that priority of mechanics' liens in Nevada is established by NRS § 108.225 "which provides that mechanics' liens are superior to . . . other encumbrances only when such . . . encumbrances have attached subsequent to the time construction was commenced or when the [mechanics'] lienholder had no actual or constructive notice [of the encumbrance] at the time work was commenced."

In *Aladdin Heating,* the Nevada Supreme Court held that preparatory work consisting of surveying land, soil testing and drafting architectural plans did not constitute 'work done' under NRS 108.225 and was insufficient to establish priority for a mechanics' lien over a deed of trust which was recorded after the preparatory work began. 563 P.2d at 84; *see also Nevada Nat. Bank v. Snyder,* 108 Nev. 151, 826 P.2d 560, 563 (1992) (mechanics' liens did not have priority over a deed of trust recorded after the preliminary work

of soil and engineering studies, digging wells, and trenching because the preliminary work did not constitute "work done" within the meaning of NRS 108.225). The *Aladdin* Court reasoned as follows:

Were we to hold otherwise and permit mechanics' liens to accrue based on this work done prior to the commencement of construction, mechanics' liens could relate back to a time long before there were any visible signs of construction to inform prospective lenders inspecting the premises that liens had attached. Under such circumstances no prudent business man would be willing to lend construction money.

563 P.2d at 84.

Just as in *Aladdin* and *Snyder,* Nybo did not establish any "work done" within the meaning of NRS 108.225 for purposes of establishing priority over Buyers. Nybo's work was, at best, preparatory work which included engineering studies, surveying, creating parcel maps and other technical drawings, and staking the property to show parcel boundaries and potential roads. The Nevada Supreme Court specifically rejected claims that engineering studies, surveying and drafting plans could constitute "work done" so as to cause a mechanics' lien to attach and provide priority over other encumbrances on property. *See Aladdin,* 563 P.2d at 84 (surveying land and drafting plans do not constitute "work done"); *Snyder,* 826 P.2d at 563 (engineering studies do not constitute "work done"). Staking parcel boundary and potential roads does not provide any more additional notice of "work done" than the surveying rejected in *Aladdin* or the digging of wells and trenching rejected in *Snyder. See Ketchum, Konkel, Barrett,*

**2.** At the time Walker was decided, Cal.Civ. Code Proc. § 1188.1 (now codified without substantial change at Cal.Civ.Code § 3134), governed priority of mechanics' liens and was similar to Nevada's mechanics' lien priority rules. Section 1188.1 provided, in the pertinent part, that mechanics' liens "are preferred to any . . . other encumbrance upon the premises and improvements . . . which may have attached subsequent to the time when the building, improvement, structure, or work of improvement in connection with which the lien claimant has done his work or furnished his material was commenced; also to any . . . other encumbrance of which the lien claimant had no notice and which was unrecorded at the time the building, improvement, structure, or work of improvement . . . was commenced."

*Nickel & Austin v. Heritage Mountain Development Co.*, 784 P.2d 1217, 1227–28 (Utah App.1989) (relying on *Aladdin* and a majority of other jurisdictions to conclude that surveying and staking are not sufficient commencement of "work done" to cause a mechanics' lien to attach); *South Bay Engineering Corp. v. Citizens Sav. & Loan Assn.*, 51 Cal.App.3d 453, 455–58, 124 Cal.Rptr. 221, 222–24 (Cal.App.1975) (making topographical maps, staking and placing plaster monuments were not a "work of improvement" sufficient for a mechanics' lien to attach).

Nybo relies on *Nolte v. Smith*, 189 Cal. App.2d 140, 142–50, 11 Cal.Rptr. 261 (Cal. App.1961) for the proposition that an engineer is entitled to an enforceable mechanics' lien when the engineer performs services on undeveloped property consisting of surveying, planning, mapping, preparing a subdivision map, staking and erecting permanent markers with no further work being completed. *Nolte,* however, is distinguishable from the present case in two respects.

First, the court in *Nolte* held that the "setting of permanent monuments in the ground, for land subdivision, following extensive engineering services, is ... the commencement of a work of improvement" sufficient for a mechanics' lien to attach. 189 Cal.App.2d at 148–49, 11 Cal.Rptr. 261. However, even if the Nevada Supreme Court were to find that a permanent monument would constitute "work done" under the Nevada mechanics' lien statute, the record before this Court does not contain any evidence that work of a permanent nature, such as "permanent monuments," was done at Black Mountain. The only surveying markers placed at Black Mountain, were temporary stakes which are not sufficient for a mechanics' lien to attach, even under California law. *See South Bay,* 51 Cal.App.3d at 455–58, 124 Cal. Rptr. at 222–24 (staking and placing plaster monuments were not a "work of improvement" sufficient for a mechanics' lien to attach).

Second, the *Nolte* court found that the engineer performing the work was employed by a corporation which was wholly controlled by the owner of the property. The court further found that the engineering services were performed at the request and direction of the owners, but construction had not begun due to the fault of the owners. 189 Cal.App.2d at 142–43, 11 Cal. Rptr. 261. The *Nolte* court emphasized that wrongful prevention of construction by the owner who contracted for the engineering services, estops the owners from claiming that no work of improvement had begun. *Id.* at 148–149, 11 Cal.Rptr. 261 (apparently relying on *Lamoreaux v. Andersch,* 128 Minn. 261, 150 N.W. 908 (1915)).

The Nevada Supreme Court has not decided whether the rule expressed in *Nolte* would be applicable in Nevada. This Court, however, need not decide the issue because the facts in this case are distinguishable. Tri–Star, not Buyers, requested and directed the engineering services that are the basis of Nybo's mechanics' lien. Tri–Star was also the owner of Black Mountain at that time. Nybo, therefore, relied on Tri–Star for payment. No evidence was presented at trial which indicated that Nybo relied on Buyers with respect to the work that is the basis of Nybo's mechanics' lien. Therefore, even if the rule expressed in *Nolte* applied in Nevada, estoppel could possibly be asserted against Tri–Star but not against Buyers. *See NGA # 2 Ltd. Liability Co. v. Rains,* 113 Nev. 1151, 946 P.2d 163, 169 (1997) (estoppel requires the party asserting estoppel to have relied to his detriment on the conduct of the party to be estopped); *see also Walker,* 84 Cal.Rptr. 521, 465 P.2d at 501–02 (no estoppel unless the party asserting it relied to his detriment on the conduct of the person to be charged).

Nybo claims that because Buyers had actual, constructive or recorded notice of its mechanics' lien before Buyers purchased their parcels, visible signs of construction are not required to establish pri-

ority. Nybo argues a third party need not be informed that a mechanics' lien has attached by commencing visible work on the property if the third party has appropriate notice by other means.

 In *Schofield v. Copeland Lumber Yards,* 101 Nev. 83, 692 P.2d 519, 520 (1985), the Nevada Supreme Court held that when there is substantial compliance with the requirements of the mechanics' lien statute, those requirements will be liberally construed in order to effect the desired objective of securing payment to those who perform labor or furnish material to improve the property of the owner. The court, however, also held that the requirements of the mechanics' lien statute cannot be so "liberally construed as to condone the total elimination of a specific requirement of the statute." *Id.* Pursuant to NRS 108.225, priority for mechanics' liens over other encumbrances can only be established when the required work or improvements have commenced on the property to be liened. *See also Erickson Construction,* 513 P.2d at 1237 (priority of a mechanics' lien over other encumbrances is determined by NRS 108.225). The Court cannot eliminate this specific requirement in favor of an actual, constructive, or recorded notice requirement that is not mentioned in any part of Nevada's statutory scheme for mechanics' liens. *See E.W. Allen & Associates v. FDIC,* 776 F.Supp. 1504, 1507 (D.Utah 1991) (prior recorded notice cannot substitute for commencement of work to establish mechanics' lien priority when priority section of states mechanics' lien statute makes no mention of priority through recorded notice); *Ketchum,* 784 P.2d at 1224 (prior actual notice of substantial architectural and design work does not establish priority for mechanics' lien when state mechanics' lien statute did not provide for priority based upon actual notice); *Walker,* 84 Cal.Rptr. 521, 465 P.2d at 501–02 (actual notice of work that constituted mechanics' lien could not substitute for mechanics' lien statute requirement that work commence before the mechanics' lien could attach). If the Nevada legislature had intended to provide for mechanics' lien priority by notice other than the commencement of work or improvements, the legislature could have easily established priority thorough use of the record notice system.

Nybo claims that the Nevada legislature provided for attachment of mechanics' liens without work being done at the property when the work consists of services provided by engineers, land surveyors or geologists. In support of its claim, Nybo cites NRS 108.2231(1) which provides:

Any person, who, at the request of the owner of any real property, building, structure or improvement thereon, or his agent, performs services as an engineer, land surveyor or geologist in relation to that real property, building, structure or improvement thereon, has a lien upon it for the work done and materials furnished.

Nybo argues that by enacting NRS 108.2231(1), the legislature removed the requirement that engineers, surveyors and geologists must actually construct physical improvements upon property before their mechanics' liens attach because engineers, surveyors and geologist rarely provide a visible work of improvement on the property. Nybo's argument is unavailing. Section 108.2231 contains no language regarding when mechanics' liens of engineers attach. The express requirement of NRS 108.225 that work commences on the property before a mechanics' lien attaches and is preferred therefore controls. Other jurisdictions that have statutes similar to NRS 108.2231 have come to similar conclusions. *See Ketchum,* 784 P.2d at 1220–23, 1227–28 (even though Utah's mechanics' lien statute was expressly expanded to provide that architects and engineers are entitled to mechanics' liens, such liens do not attach and do not have priority over third party interests until the priority rules of the mechanics' lien statute requiring visible commencement of work have

been satisfied);[3] *Walker*, 84 Cal.Rptr. 521, 465 P.2d at 499–502 (even though California's mechanics' lien statute provided that architects contributing to the construction of any work of improvement shall have a lien upon the property, such lien does not attach until the priority rules of mechanics' lien statute requiring visible work on the property have been satisfied).[4] Nybo's mechanics' lien, therefore, cannot be preferred to Buyers' ownership interest because no improvement or work had commenced on the property sufficient to satisfy the priority requirements of NRS 108.225. Because this Court finds that Nybo's mechanics' lien did not attach and that Buyers' parcels are not subject to Nybo's mechanics' lien, this Court need not consider Buyers' other arguments. Accordingly,

IT IS **ORDERED** that the bankruptcy court's order dated October 20, 1998, finding that the parcels owned by Paragon, Kimball and Ness are subject to Nybo's mechanics' lien and subsequent judgments and orders based upon finding the parcels owned by Paragon, Kimball and Ness are subject to Nybo's mechanics' lien, including orders and judgments awarding attorney fees, are **REVERSED** and the matter is **REMANDED** for findings and decisions in accordance with this opinion.

---

3. Utah Code Ann. § 38–1–3 provides, in the pertinent part, that "licensed architects and engineers ... who have furnished designs, plats, plans, maps, specifications, drawings, estimates of cost, surveys or superintendence, or who have rendered other like professional service, or bestowed labor, shall have a lien upon the property upon or concerning which they have rendered service...."

4. At the time Walker was decided, Cal.Code Civ.Proc. § 1181 (now codified without substantial change at Cal.Civ.Code § 3110) provided, in the relevant part, that "architects, registered engineers [and] licensed land surveyors ... contributing to [a] work of ... improvement shall have a lien upon the property upon which they have bestowed labor ... for the value of such labor done...."