[Civ. No. 15645.   Second Dist., Div. Three.   July 18, 1947.]

NORINS REALTY CO., INC. (a Corporation), Appellant, v. CONSOLIDATED ABSTRACT AND TITLE GUARANTY COMPANY et al., Respondents.

Maurice Gordon for Appellant.

Surr & Hellyer for Respondents.

SHINN, Acting P. J.—This action was instituted in Los Angeles County against Consolidated Abstract and Title Company, a corporation, and five named individuals. The corporation and defendant A. E. Grow appeared by demurrer and

moved for transfer of the cause to San Bernardino County, where the principal place of business of defendant Consolidated was and is located, and in which the real property, which is one of the subjects of the action, is located. The motion was supported by the affidavit of A. E. Grow and no counteraffidavit was filed by plaintiff, although it was alleged in the complaint that defendant Grow and the four other individual defendants resided in the county of Los Angeles. So far as appears, these four defendants had not been served with process at the time of the hearing. Defendants' motion for an order changing the place of trial was granted and plaintiff appeals.

The sole contention of plaintiff is that the five individual defendants are proper parties defendant, that the complaint states the substance of a cause of action against them and that the action is, therefore, triable in Los Angeles County, although if Consolidated had been the only defendant it would have been proper to have removed the cause to San Bernardino County.

From an examination of the complaint we are unable to discover in its allegations the existence of any cause of action against the individual defendants. The complaint is in two causes of action. It alleges that in the year 1925, Consolidated was the owner of 1,171 lots in certain subdivisions and also 180 acres of unsubdivided land in the mountains of San Bernardino County; that in 1927, Consolidated organized a mutual water company, Alpine Water Users Association, for the development of water underlying said property for distribution to the purchasers of lots; that prior to August 30, 1925, Consolidated sold to various purchasers 668 of the aforesaid 1,171 lots and transferred to each purchaser one share of water stock; that on October 30, 1945, Consolidated agreed to sell and plaintiff to purchase 503 lots in said subdivisions, together with one share of water stock for each of said lots, said agreement containing the following provisions: "The Vendor represents that it has made a survey of the water bearing lands and that sufficient water is or can be made available for domestic use requirements of the owners of the property embraced in Parcels 1, 2, 3, 4 and 6. That Vendor has reserved certain lots in said subdivisions embraced in Schedule 'A' for the purpose of developing water for use by the owners of the property embraced in said Schedule 'A'; that Vendor agrees to convey without cost to the Vendee, said reserved lots to the Alpine Water Users Association."

It is alleged that prior to the execution of the agreement Consolidated represented and warranted to plaintiff that each of said 503 lots would be supplied with sufficient water for domestic use at an annual cost of not more than $1.00 per share of water stock. It is alleged that plaintiff has sold 403 lots and retains ownership of 100 and that on the 1,171 lots, 260 cottages have been built; that the present water supply is insufficient to supply the 260 cottages with water for domestic use and that additional water must be developed. A controversy is alleged to exist, in that defendants contend that additional water must be developed at the expense of the water users association while plaintiff contends that the obligation to develop additional water is that of Consolidated. There are additional allegations to the effect that Alpine Water Users Association was originally granted a permit by the Commissioner of Corporations to issue 1,500 shares of its stock to Consolidated for certain water bearing lots and distribution facilities and to sell 2,500 shares at $10 per share to provide funds for further water development, and that in 1941, another permit was issued authorizing the issuance of 1,000 shares to Consolidated in consideration for the development of additional water and the extension of the distributing system. Although it is alleged that Consolidated caused the aforesaid permits to be issued it does not appear that the proceedings taken were pursuant to any provision of its agreement with plaintiff.

The second cause of action repeats the material allegations of the first cause of action and alleges that on October 30, 1935, Consolidated gave plaintiff an option to purchase 180 acres of unsubdivided lands, adjoining said subdivisions, at a price of $100 per acre; that in 1941, plaintiff purchased under the option 38½ acres of said land and that at the time of the purchase Consolidated agreed to share equally with plaintiff the cost and expense of developing certain additional water; that plaintiff has at all times been ready, willing and able to pay its share of the costs, to perform its obligations under the water development agreement, but that on or about December 3, 1945, Consolidated proceeded with the development of said additional water supply. It is alleged that Consolidated had extended plaintiff's option to purchase the remainder of the land to February 20, 1942; that plaintiff did not purchase the land but insisted that its option had remained and would remain in full force and effect until Consolidated performed its obligations under the water agree-

ment; that in the latter part of December, 1945, and later, plaintiff offered to purchase the remainder of the land but that Consolidated refused and still refuses to accept the purchase money or to convey the land, but has agreed to sell the land to a third party. It is alleged that $100 per acre was and is a fair price for the land and that plaintiff has performed all its obligations under its respective agreements. It is alleged that by reason of Consolidated's refusal to convey the land plaintiff has been damaged in the sum of $42,000. The prayer is for declaratory relief, for specific performance of the agreement to sell the remainder 180 acres, and for damages in the sum of $42,000.

In the foregoing there is nothing to connect the individual defendants with the obligations which Consolidated assumed under the contract and the option. Certain additional allegations of the complaint are relied upon by plaintiff as imposing the obligations of Consolidated upon said individual defendants. It is alleged that one Alva L. Sloan, at the time of his death in 1941, was the owner of two-thirds of the stock of Consolidated and that defendant A. E. Grow owned the remainder; that the estate of Sloan was distributed in 1942 to his widow, a son and two daughters, who are named as defendants herein. It is alleged that prior to the death of Alva L. Sloan, Consolidated sold all its assets with the exception of about 140 acres of unsubdivided land, being the land which plaintiff seeks to acquire under its option, and that the proceeds of the sale of assets of Consolidated were divided between said Alva L. Sloan and defendant A. E. Grow. It is alleged that Consolidated has for a number of years been dormant and not actively engaged in business and that it has been since the death of Alva L. Sloan and is now completely controlled, dominated, managed and operated by the individual defendants, and has been at all times, and is the *alter ego* of its stockholders.

Plaintiff's theory of liability on the part of the individual defendants is obscure. It appears to be that if judgment is rendered for damages which are not recoverable from the corporation the stockholders would be liable for any deficiency and are, therefore, proper parties in the present action. It appears to be contended also that if other obligations are imposed by judgment upon Consolidated, like obligations should be imposed upon the stockholders. Plaintiff says the stockholders were joined to prevent a multiplicity of suits, but it

appears to us that they were joined in order to hold the action for trial in Los Angeles County. They are not parties to the agreements, they have not guaranteed performance on the part of Consolidated, and they are accused of no fraud or wrongdoing. All that is alleged respecting them is that they are stockholders and residents of Los Angeles County. Consolidated is not alleged to be insolvent and no facts are alleged from which it can be inferred that it will be unable to respond to any judgment which may be imposed upon it. ■ The allegation that a corporation is the *alter ego* of the individual stockholders is insufficient to justify the court in disregarding the corporate entity in the absence of allegations of facts from which it appears that justice cannot otherwise be accomplished. (*California L. & S. Supplies* v. *Schultz,* 105 Cal.App. 471 [287 P. 980].) The court will not disregard the corporate entity unless it is necessary in order to prevent fraud or injustice (6A Cal.Jur. p. 76.) ■ Mere ownership of all the stock and control and management of a corporation by one or two individuals is not of itself sufficient to cause the courts to disregard the corporate entity (*Hollywood Cleaning & P. Co.* v. *Hollywood L. Service,* 217 Cal. 124, 129 [17 P.2d 709]; *Erkenbrecher* v. *Grant,* 187 Cal. 7 [200 P. 641].) ■ The nature of the action is to be determined from the character of the complaint and from the character of the judgment which might be rendered upon a default thereto (*McFarland* v. *Martin,* 144 Cal. 771, 774 [78 P. 239]; *Work* v. *Associated Almond Growers,* 76 Cal.App. 708 [245 P. 790]). ■ The allegations of the complaint are not sufficient to support a judgment against the individual defendants.

Since no cause of action is stated against them it must be assumed that they were joined for the purpose of retaining the cause in Los Angeles County. In ruling upon the motion the fact that they were residents of Los Angeles County was not to be considered. (Code Civ. Proc., § 395; *Konnoff* v. *Fraser,* 62 Cal.App.2d 788 [145 P.2d 368].)

The order is affirmed.

Wood, J., and Kincaid, J. pro tem., concurred.