[Civ. No. 10589. Third Dist. Jan. 20, 1964.]

DESIGN ASSOCIATES, INC., Plaintiff and Appellant, v. HAROLD M. WELCH et al., Defendants and Respondents.

166

Hoseit & Luther, Max H. Hoseit and Charles W. Luther for Plaintiff and Appellant.

Chamberlain & Chamberlain, T. L. Chamberlain and Paul H. Chamberlain for Defendants and Respondents.

PIERCE, P. J.—Plaintiff corporation sued defendant Harold M. Welch and his wife (hereinafter ''Welch'') as individuals under a contract for performance of architectural services. The amount sued for was $13,215.78. It also claimed a lien in this amount against the premises for which plans were prepared. These premises are owned in fee by defendant Donner Lake Development Co., a corporation (hereinafter ''Development Co.''), which is selling under an executory contract of sale to defendant Anna S. Nisbet, who has assigned to Welch, who in turn had, prior to the contract sued on, assigned to Donner Lake Lodge, Inc. (hereinafter ''Lodge, Inc.''), *not a party to the litigation.* The case was tried to the court which gave judgment in favor of all defendants. The trial court found: (1) that the contract sued upon was between plaintiff and Lodge, Inc., and that Welch was not a party thereto; (2) that no valid mechanic's lien could be imposed against the property because the planned improvement was never initiated; that it was invalid as against Development Co. and Nisbet because they had no knowledge of the work performed by plaintiff. Our holding is that the judgment must be affirmed for reasons which will be developed below.

Plaintiff's attack upon the trial court's holding that its contract was with Lodge, Inc., and not Welch is based upon the theory that the court, as a matter of law, should have applied the *"alter ego"* doctrine; that it should disregard the corporate entity; pierce the corporate veil. Facts suggesting this theory were neither pleaded nor was the case tried by presenting all of the facts upon which the doctrine, equitable in nature, depends. Nothing in the printed record before us indicates that plaintiff relied upon anything in the trial court other than the contention that it had contracted with Welch as an individual. After stating the facts we will expand discussion of the doctrine sought to be invoked by plaintiff and explain why we deem it is unavailable to it on this appeal.

We now review the record and do so, as we must, viewing substantial evidence and inferences reasonably to be drawn in the light most favorable to respondents.

Welch, in February 1959, operated a resort known as Donner Lake Lodge. The real property, as indicated above, was being bought from Anna Nisbet who was buying from Development Co., owner of the fee. Prior to 1959 plaintiff had performed other architectural services — the preparation of a master plan — for the then-envisioned expansion of the resort. This was in 1957-1958. This work had been by contract with Welch as an individual and had been paid for.

Then in December 1958 the corporation, Lodge, Inc., having been organized, Welch contracted to sell the resort to the corporation.

No permit to Lodge, Inc., to issue corporate shares had then been granted. Modification of the original "master plan" prepared by plaintiff was contemplated. Welch negotiated with plaintiff's chief architect and executive vice president, Riley, for this work and the preparation of cost estimates. Both were to be used as a part of the prospectus for a stock sale to the public, the proceeds of which were to be expended to defray costs of the project. Substantial evidence supports defendants' position that the existence of the corporation and the plan outlined above were known to plaintiff when the contract negotiations took place and that plaintiff agreed to look to the corporation for payment for its work. Welch testified; ''I had no contact with Design Associates until I called them myself in January or early February, 1959. At that time I definitely stated that it was now a corporation and I didn't want anything in my name; that I was presi-

dent *but was not directly responsible as an individual."* (Italics supplied.)

An agreement was reached and the contract was drawn up by Riley acting for plaintiff. It was in letter form, dated February 6, 1959, addressed to "Donner Lake Lodge, Inc. c/o Mr. Harold Welch, Donner Lake Lodge, U.S. 40, West of Truckee, California." As framed it was a proposal signed "Design Associates, Inc. Elvin Riley Architect"

The typewritten agreement included a form for endorsement of acceptance. This was signed and returned by Welch who did not insert the corporate name above his signature nor add the title of his corporate office of president. He testified he had intended to do this but overlooked it.

The contract contemplated three phases of work: (1) "pre-preliminary" work for modifying the master plan of 1958, including several artists' conceptions and construction cost estimates; (2) "preliminary" work consisting of more design work and some mechanical and electrical work plans; (3) preparation of working drawings for the complete project. *Phases (2) and (3) were not to be commenced unless and until approval by owner had been given of phase (1).*

Plaintiff completed the "pre-preliminary" drawings on March 6, 1959, and sent them to Welch. Also sent was an invoice for this work for $1,049. This invoice billed the work to Welch who made no protest that it was not billed to the corporation. He testified he had not noticed that the billing was to him. The invoice contained the same job number as the 1958 work which had been done for Welch as an individual. On the other hand, numerous letters by plaintiff regarding the work being done by it were addressed to the corporation, care of Welch.

Written approval of the "pre-preliminary" work was never given; and Welch denied giving oral approval or authorization for further work. Plaintiff, nevertheless, proceeded with working drawings covered by the *third* stage. Riley testified plaintiff did this because he knew that Welch wanted the work to be completed for the Winter Olympic Games at Squaw Valley and therefore haste was essential. Welch denied he had pushed for completion in time for the Winter Olympics. The evidence in the record, while conflicting, presents a far from clear picture as to why plaintiff's personnel continued the work without explicit approval of the work of the first phase: also as to why phase (2) seems to have been bypassed for work on phase (3).

Welch denied knowledge of any plans prepared or work done by plaintiff other than the pre-preliminary work for which invoice had been received until he received another invoice in July which billed him for the total in excess of $13,000. He then told plaintiff to stop further work. Plaintiff had already stopped work in June.

On May 27, 1959, a permit was received by the corporation to issue shares. None were sold under this permit nor under a later permit.

Until September 1959 Welch continued to operate the resort as an individual and maintaind the liquor license in his own name. On September 1, 1959, the business was transferred to the corporation. Until this transfer, the corporation's only asset was its contract of purchase and sale from Welch.

On July 15, 1959, plaintiff filed its claim of mechanic's lien of record. Neither then nor at any subsequent time before trial was any work of improvement done using the plans prepared by plaintiff or on the project contemplated thereby. Evidence supports the finding that neither the owner, Development Company, nor Anna Nisbet, had actual knowledge of the work done by plaintiff, although the latter had seen the artists' renditions prepared in March (for the prospectus). She was a director of the corporation, but had no knowledge of the contract with plaintiff. Although she was a part-time bookkeeper at the Lodge, she had never posted, nor had she knowledge of, the invoices sent by plaintiff.

Plaintiff, as stated above, contends on appeal that even though the contract was between it and the corporation, Lodge, Inc., the trial court should have disregarded the corporate entity, as a matter of law, holding Welch liable. ■ Adequate for purposes of this opinion is discussion of the so-called "*alter ego*" theory in 3 Witkin, Summary of California Law, "Corporations," section 4, page 2303 et seq. This author says (on p. 2303) : "When a corporation is used by an individual or individuals, or by another corporation, to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, a court may *disregard the corporate entity* and treat the acts as if they were done by the individuals themselves or by the controlling corporation. It is often said that the court will disregard the 'fiction' of corporate entity, or will 'pierce the corporate veil.' Some writers have criticized this statement, contending that the corporate entity is not a fiction, and the doctrine merely

limits the exercise of the corporate privilege to prevent its abuse. [Citations.]''

 To be applicable so that the acts and obligations of the corporation can be considered those of the individual, all of the following circumstances must be present: (1) the individual sought to be charged must not only be the sole owner and manager of the corporation, but there must be such ''a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased;'' and (2) *the facts must be such that to deny individual liability would ''sanction a fraud or promote injustice.''* (*Minifie* v. *Rowly*, 187 Cal. 481, 487 [202 P. 673].) (Italics supplied.)

In *Norins Realty Co.* v. *Consolidated Abstract & Title Guar. Co.*, 80 Cal.App.2d 879 [182 P.2d 593], the court refused to disregard the corporate entity, pointing out the individuals (1) were not parties to the contracts, (2) had not guaranteed performance, (3) were not accused of fraud or other wrongdoing; and (4) that there was no allegation that the corporation was presently or prospectively insolvent. It is noteworthy that *Norins, supra,* was a pleading case, the holding being that no facts were pleaded stating a cause of action against the individuals.

 In the case at bench the pleading is conversely defective. No cause of action is pleaded aginst the corporation, which is not even a party. The *''alter ego''* doctrine (where it is sought to be interposed against the individual) presupposes that the contract is entered into with the corporation but postulates its privilege of separability should be swept aside to prevent a fraud or inequity. That was not plaintiff's theory here either as pleaded, as pretried, or as tried. Plaintiff insisted throughout the trial its contract was with Welch, a contention with the trial court on substantial evidence rejected. Although facts do incidentally appear in the record suggesting circumstances which, if properly put in issue, might have justified the trial court in disregarding the corporate entity to hold Welch, it cannot in fairness be said that Welch was ever afforded reason or opportunity to defend against the *''alter ego''* charge.

 Generally a party to an action may not, for the first time on appeal,[1] change the theory of the cause of action.

[1] We have been informed dehors the record that the *''alter ego''* doctrine was raised by briefs in the trial court. The trial court's opinion

172

There are exceptions. "But if the new theory contemplated a factual situation the consequences of which are open to controversy and were not put in issue or presented at the trial the opposing party should not be required to defend against it on appeal." (*Panopulos* v. *Maderis*, 47 Cal.2d 337, 341 [303 P.2d 738]; *Ward* v. *Taggart*, 51 Cal.2d 736, 742 [336 P.2d 534].) ■ Cutting deeper, however, is the rule (applicable here) that a plaintiff who pleads one cause of action cannot recover upon another, wholly different, cause of action. (Code Civ. Proc., §§ 471, 1868; see 2 Witkin, Cal. Procedure, "Pleading," § 603, p. 1615.)

This is not merely a "theory-of-recovery" disparity, or even variance between allegation and proof. It is a case of failure of proof on facts pleaded.

■ We move to the discussion of plaintiff's contention that the trial court erred in denying the existence of a mechanic's lien against the property for the work done. Of course, if the agreement were to be construed to be strictly upon a contingency basis so that no liability on the part of anyone arose unless and until the condition occurred upon which liability depended, to wit, the sale of stock, then no lien right accrued because no debt existed when the suit was brought or tried and the lien claim was, as the court found, premature. But even if we assume that a debt owed by the corporation existed, although the fund primarily looked to for its payment had failed, the trial court was, nevertheless, justified in denying the existence of the lienable claim.

■ Architects are expressly included as members of a class who in a proper case are given a lien for "performing labor upon or bestowing skill or other necessary services on . . . the construction, alteration, addition to, or repair, either in whole or in part, of, any building, structure, or other work of improvement." (Code Civ. Proc., § 1181.) ■ The lien is "upon the property upon which they have bestowed labor." It exists if the work was done "at the instance of the owner or of any person acting by his authority or under him, as contractor or otherwise." (Code Civ. Proc., § 1181.)

■ Among other findings supporting the trial court's conclusion denying a lien is that "the premises and property in question were not benefited by the work done by plaintiff."

We have shown above that the contract was for three pha-

does not mention it. Nothing in either transcript before us discloses reliance on the doctrine.

ses of work, the first of which called for "pre-preliminary" renditions with estimates of cost; that these were to be used for a prospectus for a sale of shares; that Welch was to give approval thereof before further work was done; and that no such approval had been given.

Under these circumstances the trial court was justified in its determination that lienable work had not been performed. There is California authority generally to the effect that if the "work of improvement" is not constructed there is no "property" upon which the lien can attach but this rule is subject to the exception that where the project fails through the fault of the person whose interest is sought to be charged he is estopped to deny its benefit. (See cases cited and discussion in *Nolte* v. *Smith,* 189 Cal.App.2d 140 [11 Cal. Rptr. 261, 87 A.L.R.2d 996].) But we have found no California case covering services of the nature involved here. A not-recent (1899), but, we think, well-reasoned decision of the Supreme Court of Nebraska, *Fiske* v. *School Dist. of City of Lincoln,* 78 N. W. 392, discusses the question of when the plans of an architect are, or are not, a part of the "work of improvement." This case did not involve a mechanic's lien, but the language used is apt. The court says, on pages 393-394: " ... The work of an architect may or may not, according to circumstances, fall within the head of building operation. ... [A]n architect who prepares plans according to which a building is actually constructed may be said to furnish work in the construction of such building, especially when he superintends the construction. But the preparation of plans is often necessary as a preliminary, merely to assist an owner in determining whether he shall build, and, if so, how. While the project remains in this stage, the work cannot be said to be of a structural character. ... Perhaps, if the building be actually constructed, the drawing of plans then enters into the construction; but this we do not decide. What we hold is that the preparation of plans and specifications, merely in anticipation of erecting a building,—an anticipation which may or may not be realized—is not essentially a building operation .... The distinction has been sharply drawn in Pennsylvania, where it was held that an architect who superintends construction may have a mechanic's lien for his work, but that one who merely prepares plans to enable the builder to determine the kind of a building he will erect does not work 'for or about the construction of the building,' and

has therefore no lien. *Bank* v. *Gries,* 35 Pa.St. 423; *Price* v. *Kirk,* 90 Pa.St. 47. So, in Texas, the architect's fees cannot be considered as a part of the estimate of construction. *Smith* v. *Dickey,* 74 Tex. 61 [11 S. W. 1049].''

Since, in California, architects who perform services for ''the construction, alteration, addition to, or repair ... of, any building, structure, or other work of improvement shall have a lien upon the property upon which they have bestowed labor,'' (Code Civ. Proc., § 1181) such an express legislative mandate must not be given a construction so narrow as to defeat its purpose. Nevertheless, its application cannot be strained to encompass ''pre-preliminary'' work intended principally as a prospectus for a public stock-selling campaign; and particularly a determination of lienability should not be made at an appellate level after the trial court in its discretion has determined that the work done was not of a nature to bring it within the lien statute. ''It is a question of fact whether improvement has been commenced.'' (*Arthur B. Siri, Inc.* v. *Bridges,* 189 Cal.App.2d 599, 601 [11 Cal.Rptr. 322].)

Plaintiff relies upon *Nolte* v. *Smith, supra,* 189 Cal. App.2d 140, holding that an engineer who prepared a subdivision map and who had set permanent monuments on the ground was entitled to a lien for the work performed even though the plan to subdivide had died aborning. Three facts present there, not present here, distinguish that case from this: (1) the plans there prepared were not preliminary, but approved and final; (2) permanent monuments had been staked out on the ground; and (3) the failure of the project was due to the fault of the person whose interest in the land was sought to be charged. There is no showing here that the sale of shares failed due to the fault of Welch. Indeed, there is no showing that the corporate plan of financing has been more than delayed.

Insofar as a lien is claimed against Development Company as the owner of the fee, and Nisbet, who is Welch's vendor, there is an additional rule which operates to negate the claim. Although the interest of the party contracting for the performance of lienable work may be chargeable with a lien under Code of Civil Procedure section 1181, the owners of titles superior to his do not suffer such titles to become subject to the lien unless and until they have actual or constructive knowledge of the work and fail to file a notice of nonresponsibility within 10 days after the commencement of

such work. (Code Civ. Proc., § 1183.1; see *Jay Bailey Constr. Co. v. Berry Hotel Corp.*, 221 Cal.App.2d 135, 136, 137 [34 Cal.Rptr. 272].) Here the trial court found defendants Development Company and Nisbet had no such knowledge, actual or constructive, and the evidence supports that finding.

The judgment is affirmed.

Schottky, J. and Friedman, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 18, 1964.