In re Richard J. MORRELL, Debtor.

Edward M. WALSH, Trustee, Plaintiff,

v.

Marilyn P. MISENAR; Salvatore A. Bartimioli and Rose Laura Bartimioli; Albert P. Lomeli, Contra Costa County Tax Collector, State of California, Black & Veatch, dba Frederick Sena & Associates; Accounts Adjustment Bureau, a California corporation; Bruce M. Kellogg; and Chicago Title Company, Defendants.

And Counter-Claim.

No. C–84–0091 RFP.

United States District Court, N.D. California.

July 10, 1984.

miss or convert "on its own motion" was delet- ed. S.2266, 95th Cong., 1st Sess. (1977).

Dennis D. Davis, Terrance L. Stinnett, Goldberg, Stinnett & MacDonald, San Francisco, Cal., for plaintiff Edward M. Walsh.

Richard M. Kaplan, Richard M. Kaplan, P.C., San Francisco, Cal., for defendants.

## ORDER

PECKHAM, Chief Judge.

### I. INTRODUCTION

This is an appeal from a decision in Bankruptcy Court granting summary judgment in favor of defendant-appellee Black & Veatch. The Bankruptcy Court held that appellee has an enforceable lien on certain property in debtor's bankruptcy estate. Plaintiff-appellant Edward M. Walsh, trustee for debtor Richard J. Morell, appeals that decision and conversely asks for summary judgment in his favor. Jurisdiction is based upon section 1334 of Title 28 of the United States Code (1976), which grants district courts original jurisdiction over all matters and proceedings in bankruptcy.

The issues on appeal are:

(1) whether appellee has a valid mechanic's lien when, due to the fault of the debtor, no construction or visible improvement

ever commenced on the property against which the lien is asserted; and

(2) whether appellee timely filed its notice of claim of mechanic's lien.

The court upholds the decision of the bankruptcy judge in part, finding that appellee has a valid mechanic's lien on the property in question. But the court does not rule on the timeliness of appellee's lien claim. Rather, the court remands the case to the bankruptcy judge to make factual findings on that issue. Appellee has also asked for attorneys' fees; the court denies that request.

## II. FACTS

Appellee, a firm of licensed architects and engineers, contracted with debtor to prepare drawings and specifications for a proposed improvement on debtor's property located in Pittsburg, California. Appellee performed the contract and completed the plans in late August of 1979. But the debtor never commenced construction of the project, and failed to pay appellee the contract price of $14,000. On September 3, 1980, appellee recorded its notice of claim of lien against debtor's property, claiming $18,657.33, the contract price increased by change orders and extra work.

On April 15, 1981, an involuntary petition under Chapter 7 of the Bankruptcy Code was filed against debtor, who had fled the state. Walsh was appointed trustee of debtor's estate, which included the realty in Pittsburg. On May 26, 1981, the matter was converted into a Chapter 11 case.

In October of 1982, Walsh filed an adversary proceeding to determine the validity of various claims against the property, including appellee's claim arising under the mechanic's lien. On January 24, 1983, the bankruptcy judge determined that the property was subject to two encumbrances—a first deed of trust recorded on April 16, 1976, and a second deed of trust recorded on December 1, 1976. Walsh contended that appellee's mechanic's lien claim was invalid because the notice of the lien was untimely, and there was no improvement on the land against which a lien could attach. Both parties filed cross-motions

for summary judgment. On December 9, 1983, the Bankruptcy Court granted appellee's motion, ordered Walsh to pay appellee the amount of the lien, and denied Walsh's motion for summary judgment. This appeal arises from that judgment.

## III. STANDARD OF REVIEW

■ Summary judgment is proper " '[o]nly where there is no genuine issue of any material fact or where viewing the evidence and the inferences which might be drawn therefrom in the light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law.' " *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 543 (9th Cir. 1975), *quoting Caplan v. Roberts*, 506 F.2d 1039, 1042 (9th Cir.1974). A bankruptcy judge's conclusions of law are subject to *de novo* review in the district court. *See, e.g., In re Bubble-Up Delaware, Inc.*, 684 F.2d 1259, 1262 (9th Cir.1982); *In re Visiting Home Services, Inc.*, 643 F.2d 1356, 1359 (9th Cir.1981). There are no disputed facts in this case, so the court need not resolve whether the bankruptcy judge's findings of fact are reviewable under the standard of clear error or under the less deferential standard of General Order 24 of the Northern District of California. *See Morrissey v. Frank*, 717 F.2d 100 (3d Cir.1983).

## IV. DISCUSSION

A. *Validity of Appellee's Mechanic's Lien*

The bankruptcy judge ruled that appellee Black & Veatch has a mechanic's lien upon debtor's Pittsburg property, even though no on-site construction ever commenced. But California courts have never squarely decided whether an architect's claim for services rendered in the preparation of drawings and plans is lienable against the interest of the one who contracted for the services when, through the fault of the owner of such interest, no actual work on the ground commenced. *See Tracy Price Associates v. Hebard*, 266 Cal.App.2d 778, 788, 72 Cal.Rptr. 600, 606 (1968). Appellant argues that the bankruptcy judge

erred by not applying the rule that actual work on the ground must begin before a mechanic's lien arises. Appellee counters that that rule only applies in cases in which other security claimants assert rights in the same property. According to appellee, this court should follow the reasoning of a Minnesota case, *Lamoreaux v. Andersch*, 128 Minn. 261, 150 N.W. 908 (1915), and allow the lien to stand.

■ The purpose of a mechanic's lien is to secure to mechanics, materialmen, and anyone else who contributes labor or materials to an improvement, payment for the labor performed or materials furnished. *See Nolte v.' Smith*, 189 Cal.App.2d 140, 144, 11 Cal.Rptr. 261, 263 (1961). It also serves to discourage a casual attitude toward payment of obligations incurred in the construction of an improvement. *See Selby Constructors, Inc. v. McCarthy*, 91 Cal.App.3d 517, 525, 154 Cal.Rptr. 164, 168–69 (1979). Section 15 of Article XX of the California State Constitution guarantees mechanic's liens to persons who contribute toward an improvement of real property. This constitutional mandate has been made effective through the enactment of section 3110 of the California Civil Code (West 1974), which provides:

> Mechanics, materialmen, contractors, subcontractors, lessors of equipment, artisans, *architects*, registered engineers, licensed land surveyors, machinists, builders, teamsters, and draymen, and all persons and laborers of every class performing labor upon or bestowing skill or other necessary services on, or furnishing materials or leasing equipment to be used or consumed in or furnishing appliances, teams, or power contributing to a work of improvement shall have a lien upon the property upon which they have bestowed labor or furnished materials
> ....

(Emphasis added.) Because section 3110 specifically refers to architects, they clearly are entitled to mechanic's liens for their services.

Under section 3134 of the California Civil Code (West 1974), such liens are preferred to encumbrances that attach subsequent to the commencement of the work of improvement. A "work of improvement" includes "[t]he construction, alteration, addition to, or repair, in whole or in part, of any building ...." Cal.Civ.Code § 3106 (West 1974).

■ The general rule in California is that a mechanic's lien attaches upon commencement on the ground of the work of improvement for which the claimant has done work or furnished materials, not when the claimant actually performs the lienable work or files the lien claim. *Walker v. Lytton Savings and Loan Association*, 2 Cal.3d 152, 156–57, 465 P.2d 497, 500, 84 Cal.Rptr. 521, 524 (1970); *see generally* 6 B. Witkin, Summary of California Law 1533 (8th ed. 1974). Note, *Selected Mechanics Lien Priority Problems*, 16 Hastings L.J. 155 (1964). The rationale for the ground-work requirement is twofold. First, under section 3128 of the California Civil Code, a mechanic's lien attaches to the work of improvement and the land on which it is situated; if no work of improvement has commenced, there is nothing upon which the lien can attach. *See English v. Olympic Auditorium, Inc.*, 217 Cal. 631, 20 P.2d 946 (1933). Second, actual visible work on the land notifies potential lenders that mechanic's liens have arisen. *See generally* 6 B. Witkin, *supra*, at 1533. The court in *Walker* reasoned that if an encumbrance attaches before any work is done on the property, "[t]hen the liens of all others who contributed work or materials to the work of improvement ... would likewise relate back ... and thereby take priority over the subsequent encumbrance .... under such circumstances it would appear that construction loans would shortly become next to impossible to obtain...." *Walker*, 2 Cal.3d at 159–60, 465 P.2d at 503, 84 Cal.Rptr. at 526–27.

Because no work ever commenced on the property in the present case, the general rule seems to dictate that appellee cannot assert a mechanic's lien. But appellee points to the case of *Lamoreaux*, in which the Supreme Court of Minnesota, construing a lien statute similar to California's,

upheld an architect's lien as against the owner even though no actual work had been done on the land. In *Lamoreaux*, an architect drew up plans for an improvement, but the owners of the property refused to proceed with the construction and repudiated the architect's contract. The court concluded that it would be inequitable to permit the owner to defeat the architect's right to a lien. It explained that "[i]t is rather hard on those who have performed labor or furnished material in reliance upon the lien statute if the owner can defeat their liens by refusing to go on with the building." 128 Minn. at 267–68, 150 N.W. at 911. The court therefore held that an architect who completed lienable work may attach a lien as against the interest of the owner of the property, even if there has been no work on the ground.

Although *Lamoreaux* is not controlling in California, one court has posited that it is really an extension of the "[d]octrine recognized in California that where an improvement is not completed or is destroyed through the fault of the person whose interest is sought to be impressed with a lien, he is estopped to deny benefit." *Tracy Price*, 266 Cal.App.2d at 787, 72 Cal.Rptr. at 605. *See also Design Associates v. Welch*, 224 Cal.App.2d 165, 173, 36 Cal. Rptr. 341, 345 (1964); 1 H. Miller & M. Starr, Current Law of California Real Property § 10:9 at 525 (2d ed. 1975). Indeed, *Lamoreaux* is analogous to the present case; appellee has completed lienable work for the debtor, but debtor prevented commencement of any work of improvement on the ground. Under the logic of *Lamoreaux*, appellee is entitled to a mechanic's lien against the interest of debtor.

Several California courts have considered *Lamoreaux*, but, due to differing factual situations, none has explicitly adopted or refuted that decision. In *Nolte v. Smith*, 189 Cal.App.2d at 140, 11 Cal.Rptr. at 261, defendants employed plaintiff, an engineer, to subdivide land into lots for construction. Plaintiff surveyed the land, set permanent markers and monuments, and prepared a subdivision map. But defendants did not post bond and construction never began. The court held that the engineer's work was lienable because "[t]he setting of permanent markers in the ground, for land subdivision, following extensive engineering services, is ... commencement of a 'work of improvement' ...." *Id.* at 149, 11 Cal.Rptr. at 267. The *Nolte* court extensively discussed *Lamoreaux*, *id.* at 148–49, 11 Cal.Rptr. at 266, but did not rule on it, because the court determined that the setting of subdivision markers satisfied the on-site construction requirement. *Id.* at 149, 11 Cal.Rptr. at 267.

In *McDonald v. Filice*, 252 Cal.App.2d 613, 60 Cal.Rptr. 832 (1967), the court also discussed whether an architect can have a lien when no improvement commenced on the ground. Although the court noted *Lamoreaux* "with interest," it did not have to decide whether to extend its holding, because the parties in *McDonald* had mutually agreed to abandon the improvement project before any construction began.[1] *Id.* at 620–21, 60 Cal.Rptr. at 836–37.

Appellant cites *Tracy Price*, 266 Cal. App.2d at 778, 72 Cal.Rptr. at 600, as support for its contention that appellee does not have a lien. In that case, however, the court only held that when no actual improvement on the land has commenced, a lien for architectural services does not attach as against a trust deed or other attachment lien. Thus, *Tracy Price* concerns the issue of priority among several lien

---

1. The court also distinguished *Design Associates Inc. v. Welch*, 224 Cal.App.2d at 165, 36 Cal. Rptr. at 341. In that case, the court held that an architect did not have a lien because the work performed by the architect consisted only of preliminary renditions, which was not lienable work. The court in *Welch* distinguished *Nolte* on three grounds: (1) the plans in *Nolte* were not preliminary, but approved and final; (2) permanent markers had been staked in the ground; and (3) the failure of the project was due to the fault of the person whose interest was sought to be charged. *Id.* at 174, 36 Cal.Rptr. at 346. Although *Welch* is not directly applicable to the present case because appellee's work is lienable, it tends to support the proposition that work on the ground is not necessary to raise an architect's lien when work never commenced through the fault of the owner.

claimants. In fact, the court distinguished *Lamoreaux* as being restricted to the issue of lienability of the architect's claim against the one who contacted for the services, not against other claimants and mortgagees. *Id.* at 786, 72 Cal.Rptr. at 605 n. 3. The court pointed out that the estoppel concept behind *Lamoreaux* could not be invoked when there is more than one lien claimant:

> In the case under review, assuming *arguendo* that [defendant] was at fault in causing the project to fail and that he was thereby estopped from defeating the architect's right to a lien, there is no basis for invoking estoppel against Equity Capital or the Bank. There was no evidence that they were invested with or exercised any control over whether the project would or would not be construed or that they wrongfully prevented construction.

*Id.* at 786–87, 72 Cal.Rptr. at 606. The other encumbrance holders, unlike the owner, had not prevented construction; therefore the court reasoned that it could not estop the other claimants from contesting the architect's lien. The court concluded that "[n]o actual work on the ground having been commenced, visible or otherwise, ... the claim for architectural services may not be asserted as a valid lien against either ... the trust deed or ... [the] attachment lien." *Id.* at 788, 72 Cal.Rptr. at 606.

Like *Tracy Price, Walker* involved a question of priority among creditors. In *Walker*, defendant recorded a deed of trust after plaintiff architects had prepared plans for the proposed construction, but before any physical construction had begun. 2 Cal.3d at 152, 465 P.2d at 497, 84 Cal.Rptr. at 521. Although the court held that a lien does not attach until commencement of the work of improvement, it decided that only for the purpose of determining priorities among encumbrances:

> [u]ntil the building operation has commenced on the ground, it cannot be held under the statutory priority rules ... that it has commenced so as to give *preference* to the lien of an architect who prepared the plans.

*Id.* at 159, 465 P.2d at 502, 84 Cal.Rptr. at 526 (emphasis added). The *Walker* court specifically refrained from deciding whether to extend *Lamoreaux*, explaining that *Lamoreaux* "[d]id not involve a priority issue between a mechanic's lien claimant and the holder of a deed of trust." *Id.* at 157, 465 P.2d at 501, 84 Cal.Rptr. at 525.

Thus, California precedents do not maintain that for a lien to be enforceable against the interest of an owner, actual work on the ground must begin. Rather, they only hold that commencement of construction is a condition precedent to giving a mechanic's lien priority over subsequent liens and encumbrances. In the present case, there is no question of priorities; appellee seeks a lien only against the interest of appellant, successor in interest to debtor. Application of *Lamoreaux* is therefore appropriate in this case.

 This decision comports with the policies behind the ground-work requirement. Section 3128 of the California Civil Code, which stipulates that a mechanic's lien attaches to the work of improvement, is not a barrier to upholding appellee's lien. Courts must construe lien laws liberally in favor of the mechanic in order to effectuate their remedial purpose, *see Selby Constructors, Inc. v. McCarthy*, 91 Cal.App.3d at 525, 154 Cal.Rptr. at 168–69, and the statute giving architects a lien on property upon which they have bestowed labor must not be given a construction so narrow as to defeat its purpose. *Design Associates v. Welch*, 224 Cal.App.2d at 174, 36 Cal.Rptr. at 346. *See generally* 1 H. Miller & M. Starr, *supra*, § 10:2 at 510. The court would undermine the purpose of mechanic's liens, to insure payment to those who have rendered services toward a project, by mechanically applying section 3128 so as to defeat appellee's lien.

Allowing appellee's lien to stand is also not inconsistent with the idea that visible construction on the site serves to notify potential lenders of existing liens. That is because the architect can only assert the lien against the interest of the one who contracted for his services, not against oth-

er lien claimants. The doctrine of *Lamoreaux* arises only when the architect is the sole mechanic's lien holder. When there are other mechanic's liens, all liens will date back to the commencement of the work of improvement. Thus, the lender will not face "invisible liens." In other words, an architect has a lien as against the owner's interest once the architect completes the contract. When the work of improvement commences, the architect's lien dates from that point, with a priority relating to that date. *See* H. Miller & M. Starr, *supra*, § 10:9 at 525 n. 2.

 It would be manifestly unjust to deny an architect a lien because the person with whom the architect contracted has prevented the work that raises the lien. Architects have little or no control over the construction of their designs; they can do nothing themselves to begin work on the ground to make their liens valid. Consequently, this court adopts the holding of *Lamoreaux*, and rules that as against an owner who prevents commencement of a work of improvement, no actual or visible work on the ground is necessary for an architect to attach a mechanic's lien if the lienable work is completed. Accordingly, the courts holds that appellee has a mechanic's lien, junior to the first and second trust deeds, on debtor's Pittsburg property, now held in trust by appellant.

### B. *Timeliness of Appellee's Lien Claim*

 The court must next determine whether appellee timely filed its notice of a lien claim.[2] A lien claimant cannot enforce a mechanic's lien unless the lien claim is timely. Cal.Civ.Code § 3115 (West 1974); *Pacific Manufacturing Co. v. Rasmussen*, 42 Cal.App. 742, 184 P. 54 (1919).

 Under section 3115 of the California Civil Code, a lien claim is timely if the claimant records the claim "[a]fter he completes his contract and before the expiration of ... 90 days after the completion of the work of improvement as defined in Section 3106 ..." Section 3106 defines

completion of a work of improvement as the actual completion of the improvement or:

(a) The occupation or use of a work of improvement by the owner, or his agent, accompanied by cessation of labor thereon.

(b) The acceptance by the owner, or his agent, of the work of improvement.

(c) After the commencement of a work of improvement, a cessation of labor thereon for a continuous period of 60 days, or a cessation of labor thereon for a continuous period of 30 days or more if the owner files for record a notice of cessation.

Appellee completed the plans and specifications for debtor in August of 1979, and filed its lien claim on September 3, 1980. Appellant argues that appellee's completion of the contract caused a cessation of labor under section 3106. Appellant further maintains that because appellee did not file its lien claim within ninety days after November 1, 1979, the sixtieth day of the alleged cessation of labor, the lien claim was untimely. Appellee contends, however, that because no work of improvement ever commenced, logically there could not have been a cessation of labor or completion of the work of improvement. Thus, the ninety-day period never began to run, and appellee's lien claim was timely.

Appellant's argument is unsatisfactory. In order for a cessation of labor to occur, a work of improvement must commence, and the California Supreme Court has defined commencement of a work of improvement as

[s]ome work and labor on the ground, the effects of which are apparent—easily seen by everybody; such as beginning to dig the foundation, or work of like description, which everyone can readily see and recognize as the commencement of a building.

*English v. Olympic Auditorium*, 217 Cal. 631, 637, 20 P.2d 946, 948 (1933). *See also*

---

**2.** Although this court adopts the holding of *Lamoreaux*, the decision of that court as to the timeliness of the lien claim is inapplicable here because Minnesota's statutory requirements for filing of a notice of a lien are considerably different from California's provisions.

*Arthur B. Siri, Inc. v. Bridges,* 189 Cal. App.2d 599, 602, 11 Cal.Rptr. 322, 324 (1961). In the present case, there was no easily visible work or labor on the ground; thus, the work of improvement never commenced and there could be no cessation of labor to trigger the expiration of the filing period.

But appellee's argument is also unacceptable. Strict application of sections 3115 and 3106 in this case would mean that there would be no limit within which appellee would have to record its lien claim. Such a rule would not only leave debtor's property open to uncertainty, but would balance the mechanic's lien laws too far in favor of the lien claimant. *See Frank Curran Lumber Co. v. Eleven Co.,* 271 Cal.App.2d 175, 183, 76 Cal.Rptr. 753, 757 (1969) (courts must balance interests of both lien claimants and property holders in interpreting lien laws).

The focus of the lien recordation statutes is not upon benefit to the lien claimant, but upon protection of the property owner. The filing of a notice of lien claim fixes the time within which the lien must be enforced, and informs the owner of the extent and value of the lienor's claim. *See generally* 44 Cal.Jur. § 68 at 144 (3d ed. 1978), and cases cited therein. It also gives the public, and especially prospective purchasers or mortgagees, notice of the lien. *See Corbett v. Chambers,* 109 Cal. 178, 182, 41 P. 873, 875 (1895). In other words, the filing requirement means that after a fixed period of time (*e.g.,* ninety days after completion) the owner and the public will know or be able to find out whether a piece of property has any enforceable liens on it, and if so, what the value of those liens is. These considerations are particularly important in the bankruptcy context, where the knowledge of any encumbrances on the bankruptcy estate is crucial to its administration. Consequently, some fixed filing period must apply to the facts of this case.

The court has decided that no work of improvement is necessary for an architect to assert a mechanic's lien against the interest of the one who contracted for the architect's services. That decision requires a reformulation of the limitations period

for filing a lien claim, so that the filing period in such situations comports with the policies behind a fixed filing period.

To comply with legislative intent, the lien recordation limitations period for this case should parallel, as closely as possible, sections 3106 and 3115. Significantly, those statutes provide that the running of the ninety-day limitations period begins at the completion of the project or after a cessation of labor; that is, at the point when it appears that further construction will not continue. The equivalent point of time in the instant case is when debtor abandoned the plans for the improvement on the Pittsburg property. But the triggering events in section 3106 are overt and easily recognized by a lien claimant, while an owner's subjective intent to abandon plans for construction is not. Fairness dictates that the ninety-day period be activated only when the lien claimant knows or has reason to know that the owner is abandoning the project.

That resolution satisfies the intent of sections 3106 and 3115: to protect property owners from stale lien claims. It also parallels the statutes themselves. The court therefore concludes that appellee's lien claim was timely only if it was filed within ninety days from the time that appellee knew or has reason to know that debtor was not going to pursue construction of the planned improvement. At the latest, that date would be ninety days after appellee discovered that debtor had fled the state. Because the date on which appellee knew or had reason to know that debtor had abandoned the project is unknown, the court remands this case to the bankruptcy judge to make that finding.

## C. *Whether Appellee is Entitled to Attorneys' Fees*

Appellee claims that this appeal is frivolous and consequently it is entitled to attorneys' fees under Rule 11 of the Federal Rules of Civil Procedure. The bankruptcy judge denied appellee's motion for attorneys' fees without prejudice.

Appellee's claim for attorneys' fees is meritless. Obviously, this was not a frivolous appeal because the primary issue has never been decided in California. Appellant has not violated rule 11; accordingly, the court denies appellee's motion for attorneys' fees.

## V. CONCLUSION

The bankruptcy judge's decision granting summary judgment in favor of appellee is affirmed in part and vacated in part. The court concludes:

(1) An architect's claim for services rendered in the preparation of drawings and plans is lienable against the interest of the one who contracted for the services, where, through the fault of the one who contracted for the services, no work of improvement has commenced on the ground.

(2) In such a situation, the architect must file its notice of lien claim within ninety days from the time when it knew or had reason to know that the owner had abandoned the improvement project. Thus, appellee has a lien on the property in question as against the interest of appellant. That lien would be junior to the first and second trust deeds. Appellee's lien is enforceable if the lien claim was timely. The court remands this case to the bankruptcy court to determine the timeliness of the lien claim by examining when appellee knew or had reason to know that debtor had abandoned the project. Appellee's motion for attorneys' fees is denied.

SO ORDERED.