[No. B174411. Second Dist., Div. Three. Oct. 29, 2004.]

D'ORSAY INTERNATIONAL PARTNERS, Petitioner, v.
SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
JEFFREY C. STONE, INC., Real Party in Interest.

**COUNSEL**

Poindexter & Doutre and Anthony J. Taketa for Petitioner.

No appearance for Respondent.

Wood Smith Henning & Berman, Sam L. McDermott and Kristin M. Jefferson for Real Party in Interest.

OPINION

KLEIN, P. J.—Defendant and petitioner D'Orsay International Partners (D'Orsay) seeks a writ of mandate directing respondent superior court to enter an order releasing a mechanic's lien filed by plaintiff and real party in interest Jeffrey C. Stone doing business as Summit Builders (Summit) without requiring D'Orsay to post a release bond in lieu of the mechanic's lien.

■ The trial court granted D'Orsay's motion for release of the mechanic's lien but conditioned the order upon the posting of a statutory bond in the amount of $1.27 million, one and a half times the amount of the lien. We conclude the trial court's ruling was error and that it should have released the lien outright. For a mechanic's lien to attach, there must be "actual visible work on the land or the delivery of construction materials thereto." (*Walker v. Lytton Sav. & Loan Assn.* (1970) 2 Cal.3d 152, 157 [84 Cal.Rptr. 521] (hereafter, *Walker*).) Here, that precondition to the filing of a mechanic's lien was not met. Therefore, we grant D'Orsay's petition.

### FACTUAL AND PROCEDURAL BACKGROUND

D'Orsay is the successor to Long Beach Plaza Associates (LBPA), a California general partnership, and the record titleholder to certain real property in Long Beach. LBPA was formed for the purpose of constructing a new 176-room hotel/retail development complex, including onsite subterranean parking (the project).

In April 2001, D'Orsay entered into an agreement with Summit, a licensed general contractor, for construction of the project. In the next two years, Summit provided approximately $850,000 in design related services, both by performing design and planning services, and by hiring design professionals.

However, construction never commenced. A prerequisite to the start of construction was the securing of adequate financing. D'Orsay attempted to obtain financing, without success. No building permit was issued for the project. No building materials were delivered to the project site. No actual visible construction or other work was conducted at the project site by Summit or by anyone else.

On May 5, 2003, Summit recorded a mechanic's lien with the county registrar-recorder in the amount of $846,434.26 against D'Orsay's real property.

On August 1, 2003, Summit filed suit in the superior court, alleging various causes of action including breach of contract and seeking foreclosure of its mechanic's lien.

On February 18, 2004, D'Orsay filed a motion for release of the mechanic's lien. D'Orsay contended good cause existed for removal of the mechanic's lien in that in order to assert a mechanic's lien, a claimant must have made a direct, permanent contribution to a work of improvement, and because Summit never improved the subject property, as a matter of law Summit had no basis for maintaining the lien.

In opposition, Summit argued, inter alia, a lien for design services is specifically authorized under Civil Code section 3081.2,[1] and it is immaterial that design services are performed by a licensed contractor, rather than by a design professional such as an architect, engineer or land surveyor.

Summit also contended that its lien was proper irrespective of the lack of work on the ground because an owner cannot defeat a lien by refusing to go ahead with construction.

On March 16, 2004, the matter came on for hearing and was taken under submission. Later that day, the trial court issued a minute order stating "[D'Orsay's] Motion for Release of Lien is granted upon the posting of a bond in the amount of $1,270,000.00." The ruling does not set forth the trial court's rationale for its decision.

On April 12, 2004, D'Orsay filed the instant petition for writ of mandate, seeking an order directing Summit's mechanic's lien be released outright, without requiring the posting of a bond. This court issued an order to show cause.

## CONTENTIONS

D'Orsay contends contractors providing design services are not entitled to assert mechanics' liens in the absence of actual commencement of construction and the doctrine of owner prevention of completion is not applicable.

Summit asserts it was entitled to a mechanic's lien; no actual contribution of labor or materials to the site was necessary in order for Summit to assert a lien for various services it rendered pursuant to the contract, namely, project design and management and obtaining permits and bonds; and the statutory scheme authorizing design professionals' liens (§ 3081.1 et seq.) applies equally to a contractor such as Summit, which furnished design/planning services and hired design professionals.

---

[1] All further statutory references are to the Civil Code, unless otherwise indicated.

## DISCUSSION

1. *The lien filed by Summit was a mechanic's lien, not a design professional's lien. Therefore, Summit's reliance on the design professional's lien law, which authorizes the filing of a design lien despite the lack of commencement of construction, to allow the filing of a mechanic's lien despite the lack of commencement of construction, is misplaced.*

    a. *The statutory scheme authorizing design professionals' liens.*

■ In 1990, the Legislature added a new chapter 8 to title 14 of the Civil Code providing for design professionals' liens. The newly created lien is not a mechanic's lien.[2] The chapter is denominated "Design Professionals' Liens," and constitutes "the exclusive lien remedy for design professionals *in cases where no actual construction of the planned work of improvement is commenced prior to recordation of the notice of lien . . . .*" (Stats. 1990, ch. 1615, § 2, p. 7788, italics added.) The design professional's lien remedy is separate and distinct and "does not affect the ability of a design professional to obtain a mechanic's lien pursuant to Title 15" (§ 3081.6), provided the claimant can meet the criteria for a mechanic's lien.

With respect to the circumstances giving rise to a design professional's lien, section 3081.2 states in pertinent part: "A design professional shall, from the date of recordation pursuant to Section 3081.3, have a lien upon the real property for which the work of improvement is planned to be constructed, *notwithstanding the absence of commencement of actual construction of the planned work of improvement,* if the landowner contracted for the design professional's services and is also the owner of the real property at the time of recordation of the lien." (Italics added.)

The term "design professional" is defined in section 3081.1, which states: "For purposes of this chapter, 'design professional' means any certificated architect, registered professional engineer, or licensed land surveyor who furnishes services pursuant to a written contract with a landowner for the design, engineering, or planning of a work of improvement."

---

[2] The mechanic's lien law is contained in title 15 of the Civil Code (§ 3109 et seq.), while design professionals' liens are provided for in title 14 thereof (§§ 3081.1–3081.10 inclusive).

b. *Summit's reliance on the design professional's lien statutes is misplaced because Summit did not file a design professional's lien.*

Summit did not purport to file a design professional's lien. Rather, Summit filed a mechanic's lien. Further, Summit acknowledges that no work has commenced at the project site. However, Summit relies on the design professional's lien statutes, which enable design professionals to obtain a lien "*notwithstanding the absence of commencement of actual construction of the planned work of improvement*" (§ 3081.2, italics added), to argue that "California public policy" supports the protection of design/planning work. Summit asserts it is entitled to no less protection under the mechanic's lien law (§ 3110) than any design professional would be entitled under the design professional's lien law (§ 3081.1).

Summit's effort to import design professional's lien principles into the mechanic's lien law is unavailing. The lien in issue is a mechanic's lien and therefore must be scrutinized pursuant to the criteria applicable to mechanics' liens. That analysis follows.[3]

2. *Because work on the ground did not commence, Summit could not assert a mechanic's lien.*

a. *The pertinent mechanic's lien statute.*

Section 3110 sets forth the persons entitled to the protection of a mechanic's lien, stating: "Mechanics, materialmen, contractors, subcontractors, lessors of equipment, artisans, architects, registered engineers, licensed land surveyors, machinists, builders, teamsters, and draymen, and all persons and laborers of every class performing labor upon or bestowing skill or other

---

[3] In enacting the design professional's lien law, the Legislature sought to protect architects, registered engineers and land surveyors (§ 3081.1), professionals whose services are performed in anticipation of and in preparation for actual construction. Summit contends, and it is arguable, the rationale supporting design professional's lien rights applies equally to *contractors* that perform design/planning services and/or hire design professionals to do such work.

However, a leading treatise rejects such an interpretation and reads the design professional's lien statutes literally, stating: "The design professionals lien is available only to certified architects, registered professional engineers, and licensed land surveyors who furnish their services pursuant to a written contract with a landowner. . . . [¶] . . . [¶] The law, although it grants lien rights, . . . applies only to certified architects and registered engineers and licensed land surveyors *(thereby excluding, for example, a contractor with a design-build contract)*." (Acret, California Construction Law Manual (5th ed.) § 6.52, italics added.)

Because the lien presented for our consideration is a mechanic's lien, not a design professional's lien, we do not have occasion to pass upon whether a *contractor* performing design services or employing design professionals may assert a design professional's lien. That question will have to wait for another day.

necessary services on, or furnishing materials or leasing equipment to be used or consumed in or furnishing appliances, teams, or power contributing to a work of improvement shall have a lien *upon the property upon which they have bestowed labor or furnished materials . . . .*" (Italics added.)

### b. *The requirement of commencement of construction.*

The "general rule is that [a mechanic's lien] does not attach unless and until *construction* has been undertaken by the doing of actual visible work on the land or the delivery of construction materials thereto." (*Walker, supra,* 2 Cal.3d at pp. 156–157.)

"The rationale for the ground-work requirement is twofold. First, under section 3128 of the California Civil Code, a mechanic's lien attaches to the work of improvement and the land on which it is situated; if no work of improvement has commenced, there is nothing upon which the lien can attach. [Citation.] Second, actual visible work on the land notifies potential lenders that mechanic's liens have arisen. [Citation.]" (*In re Morrell* (Bankr. N.D.Cal. 1984) 42 B.R. 973, 976 (hereafter, *Morrell*).)

### c. *Morrell adopts a rule that against an owner who prevents commencement of construction, no actual or visible work is necessary for an architect to attach a mechanic's lien.*

The *Morrell* court was confronted with an issue as to whether an architectural firm had a valid mechanic's lien when, due to the fault of the owner, no construction ever commenced on the property against which the lien was asserted. (*Morrell, supra,* 42 B.R. at pp. 974–975.) *Morrell* acknowledged California's general rule that a mechanic's lien attaches upon commencement of work on the ground (*id.,* at p. 976), but it found a 1915 Minnesota case, *Lamoreaux v. Andersch* (1915) 128 Minn. 261 [150 N.W. 908] (hereafter, *Lamoreaux*), was analogous. (*Morrell, supra,* 42 B.R. at p. 977.)

In *Lamoreaux,* an architect drew up plans for an improvement, but the owners of the property refused to proceed with the construction and repudiated the architect's contract. The *Lamoreaux* court concluded it would be inequitable to permit the owner to defeat the architect's right to a lien. *Lamoreaux* explained, "[I]t is rather hard on those who have performed labor or furnished material in reliance upon the lien statute if the owner can defeat their liens by refusing to go on with the building." (*Lamoreaux, supra,* 150 N.W. at p. 911.) *Lamoreaux* therefore held that an architect who has completed lienable work may attach a lien as against the interest of the owner of the property, even if there has been no work on the ground. (*Morrell, supra,* 42 B.R. at p. 977.)

*Morrell* noted that several California courts had considered *Lamoreaux*, but, due to differing factual situations, none had explicitly adopted or rejected that decision. (*Morrell, supra,* 42 B.R. at pp. 977–978, discussing *Nolte v. Smith* (1961) 189 Cal.App.2d 140, 148–149 [11 Cal.Rptr. 261]; *McDonald v. Filice* (1967) 252 Cal.App.2d 613, 620–621 [60 Cal.Rptr. 832]; *Tracy Price Associates v. Hebard* (1968) 266 Cal.App.2d 778, 786–787 [72 Cal.Rptr. 600]; *Walker, supra,* 2 Cal.3d at p. 157.) *Morrell* found "California precedents do not maintain that for a lien to be enforceable against the interest of an owner, actual work on the ground must begin. Rather, they only hold that commencement of construction is a condition precedent to giving a mechanic's lien priority over subsequent liens and encumbrances. In the present case, there is no question of priorities; appellee seeks a lien only against the interest of appellant, successor in interest to debtor. Application of *Lamoreaux* is therefore appropriate in this case." (*Morrell, supra,* 42 B.R. at p. 978.)

*Morrell* concluded: "It would be manifestly unjust to deny an architect a lien because the person with whom the architect contracted has prevented the work that raises the lien. Architects have little or no control over the construction of their designs; they can do nothing themselves to begin work on the ground to make their liens valid. Consequently, this court adopts the holding of *Lamoreaux*, and rules that as against an owner who prevents commencement of a work of improvement, no actual or visible work on the ground is necessary for an architect to attach a mechanic's lien if the lienable work is completed." (*Morrell, supra,* 42 B.R. at p. 979.)

> d. *Morrell is superseded by statute; owner prevention exception to mechanic's lien requirement of commencement of construction is no longer operative.*

In 1990, six years after *Morrell* was decided, the Legislature enacted the design professional's lien law. The key provision for our purposes is section 3081.2, which states: "A design professional shall, from the date of recordation pursuant to Section 3081.3, have a lien upon the real property for which the work of improvement is planned to be constructed, *notwithstanding the absence of commencement of actual construction of the planned work of improvement,* if the landowner contracted for the design professional's services and is also the owner of the real property at the time of recordation of the lien." (Italics added.)

In adopting the design professional's lien law, the Legislature declared its intent as follows: "It is the intent of the Legislature to establish the exclusive lien remedy for design professionals in cases where no actual construction of the planned work of improvement is commenced prior to recordation of the

notice of lien, *and to thereby disapprove and supplant any lien remedy provided by the court decision of In re Morrell (D.C. 1984) 42 Bankrupt-cyRep. 973.*" (Stats. 1990, ch. 1615, § 2, p. 7788, italics added.)

Thus, the Legislature rejected *Morrell*'s holding that as against an owner who prevents commencement of construction, no actual or visible work on the ground is necessary for an architect to attach a mechanic's lien. Instead, the Legislature established the remedy of a design professional's lien, to enable a design professional to assert a lien "notwithstanding the absence of commencement of actual construction of the planned work of improvement . . . ." (§ 3081.2.)

■ In creating the remedy of the design professional's lien, the Legislature lessened the burden of a design professional by eliminating *Morrell*'s requirement that some conduct on the part of the owner prevented the commencement of construction. At the same time, the Legislature eliminated *Morrell*'s "owner prevention" exception to the general rule that a mechanic's lien cannot attach until there is actual visible work on the land.

In sum, the rule remains that for a mechanic's lien to attach, there must be "actual visible work on the land or the delivery of construction materials thereto." (*Walker, supra,* 2 Cal.3d at p. 157.)

> e. *Because construction did not commence, D'Orsay is entitled to release of Summit's mechanic's lien.*

■ Here, it is undisputed that no actual visible work was commenced at the project site and no materials were delivered to the site. As a consequence, Summit was not entitled to assert a mechanic's lien against D'Orsay's real property.

In an attempt to avoid the mechanic's lien requirement of commencement of actual visible work on the land, Summit asserts that D'Orsay "could not or would not allow Summit to complete the work." That exception, which was given credence by *Morrell*, was disapproved and supplanted by the design professional's lien law, as explained above. (Stats. 1990, ch. 1615, § 2, p. 7788.)

For these reasons, D'Orsay was entitled to an unconditional grant of its motion to release Summit's mechanic's lien.

## DISPOSITION

The order to show cause is discharged. The petition for writ of mandate is granted. Let a peremptory writ of mandate issue directing respondent court to

vacate its order granting D'Orsay's motion for release of Summit's mechanic's lien on the condition that D'Orsay post a bond of $1,270,000, and to enter a new and different order granting D'Orsay's motion to release the mechanic's lien outright without requiring the posting of a bond. D'Orsay is awarded its costs in this proceeding. (Cal. Rules of Court, rule 56.4(a).)

Croskey, J., and Aldrich, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied January 26, 2005. George, C. J., did not participate therein.